Rev. 2/11

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
**CIVIL APPEAL STATEMENT**

File Stamp

*Please TYPE. Attach additional pages if necessary.*

11th Circuit Docket Number: **15-12266-C**

| | |
|---|---|
| Caption: | District and Division: U.S. Middle District of FL, Tampa Div. |
| GEICO General Insurance Company | Name of Judge: Hon. Elizabeth A. Kovachevich |
| v. | Nature of Suit: Civil |
| Mary Bottini, as Personal Representative of the | Date Complaint Filed: February 8, 2013 |
| Estate of Gerard Bottini | District Court Docket Number: 8:13-cv-00365-EAK-AEP |
| | Date Notice of Appeal Filed: May 26, 2015 |
| | ☐ Cross Appeal    ☐ Class Action |
| | Has this matter previously been before this court? |
| | ☐ Yes  ☒ No |
| | If Yes, provide |
| | (a)    Caption: |
| | (b)    Citation: |
| | (c)    Docket Number: |

| | Attorney Name | Mailing Address | Telephone, Fax, and Email |
|---|---|---|---|
| For Appellant:<br>☐ Plaintiff<br>☒ Defendant<br>☐ Other (Specify) | B. Richard Young<br>Courtney F. Smith<br>Megan M. Hall | Young, Bill, Roumbos & Boles<br>226 S. Palafox Place, Floor 7<br>Pensacola, FL 32502 | (850) 432-2222 tel.<br>(850) 432-1444 fax<br>ryoung@flalawyer.net<br>csmith@flalawyer.net<br>mhall@flalawyer.net |
| For Appellee:<br>☒ Plaintiff<br>☐ Defendant<br>☐ Other (Specify) | George A. Vaka | Vaka Law Group<br>777 South Harbour Island<br>Blvd., Suite 300<br>Tampa, FL 33602 | (813) 549-1799 tel.<br>(813) 549-1790 fax<br>gvaka@vakalaw.com |

*Please CIRCLE/CHECK/COMPLETE the items below and on page 2 that apply.*

| Jurisdiction | Nature of Judgment | Type of Order | Relief |
|---|---|---|---|
| Federal Question | Final Judgment,<br>28 USC 1291 | Dismissal/Jurisdiction | Amount Sought by Plaintiff:<br>$ in excess of $75,000.00 |
| Diversity | Interlocutory Order,<br>28 USC 1292(a)(1) | Default Judgment | Amount Sought by Defendant:<br>$_____ |
| US Plaintiff | | Summary Judgment | |
| US Defendant | Interlocutory Order Certified,<br>28 USC 1292(b) | Judgment/Bench Trial | Awarded:<br>$ to be determined<br>to _____ |
| | Interlocutory Order,<br>Qualified Immunity | Judgment/Jury Verdict | |
| | | Judgment/Directed Verdict/NOV | Injunctions: |
| | Final Agency Action (Review) | Injunction | ☐ TRO |
| | | | ☐ Preliminary    ☐ Granted |
| | 54(b) | Other _____ | ☐ Permanent    ☐ Denied |

Page 2                                    11th Circuit Docket Number: _____  **15-12266-C**

Based on your present knowledge:

(1)   Does this appeal involve a question of First Impression?   ☐ Yes  ☒ No
      What is the issue you claim is one of First Impression?

(2)   Will the determination of this appeal turn on the interpretation or application of a particular case or statute?   ☐ Yes  ☒ No

      If Yes, provide
      (a)   Case Name/Statute
      (b)   Citation
      (c)   Docket Number if unreported

(3)   Is there any case now pending or about to be brought before this court or any other court or administrative agency that
      (a)   Arises from substantially the same case or controversy as this appeal?   ☐ Yes  ☒ No
      (b)   Involves an issue that is substantially the same, similar, or related to an issue in this appeal?   ☐ Yes  ☒ No

      If Yes, provide
      (a)   Case Name
      (b)   Citation
      (c)   Docket Number if unreported
      (d)   Court or Agency

(4)   Will this appeal involve a conflict of law
      (a)   Within the Eleventh Circuit?   ☐ Yes  ☒ No
      (b)   Among circuits?   ☐ Yes  ☒ No

      If Yes, explain briefly:

(5)   Issues proposed to be raised on appeal, including jurisdictional challenges:

      Whether the jury verdict entered in the Underlying Action for UM benefits is binding as the measure of potential damages in the action for first-party bad faith brought by BOTTINI against GEICO.

I CERTIFY THAT I SERVED THIS CIVIL APPEAL STATEMENT ON THE CLERK OF THE U.S. COURT OF APPEALS FOR THE ELEVENTH CIRCUIT AND

SERVED A COPY ON EACH PARTY OR THEIR COUNSEL OF RECORD, THIS _____9th_____ DAY OF _____June_____ , ___2015___ .

_____        _____
     Courtney F. Smith
     NAME OF COUNSEL (Print)                    SIGNATURE OF COUNSEL

*Please ATTACH portion of district court, tax court, or agency record described in 11th Cir. R. 33-1(b):   (a) judgments and orders appealed from or sought to be reviewed; (b) any supporting opinion, findings of fact, and conclusions of law filed by the court or the agency, board, commission, or officer; (c) any report and recommendation adopted by an order; (d) findings and conclusions of an administrative law judge when appealing a court order reviewing an agency determination; (e) any agency docket sheet or record index.*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARY BOTTINI, etc.,
et al.,

       Plaintiff,

v.                        CASE NO.  8:13-CV-365-T-17AEP

GEICO GENERAL
INSURANCE COMPANY,

       Defendant.

_____/


ORDER

This cause is before the Court on:

| | |
|---|---|
| Dkt. 28 | Statement of Undisputed Facts |
| Dkt. 29 | Motion for Partial Summary Judgment on Binding Effect of Underlying Verdict of Liability and Damages |
| Dkt. 30 | Deposition |
| Dkt. 31 | Request for Oral Argument |
| Dkt. 34 | Response |
| Dkt. 35 | Response |
| Dkt. 53 | Notice |
| Dkt.54 | Notice |

In the complaint, Plaintiff Mary Bottini, as Personal Representative of the Estate of Gerard Bottini, alleges a first-party bad faith claim against Defendant GEICO General Insurance Company. Plaintiff seeks to recover the total amount of Plaintiff's damages, including any amount in excess of Plaintiff's policy limits awarded by jury verdict in the Underlying Action, and damages caused by Defendant's alleged bad faith, pursuant to Secs. 624.155 and 627.727(10), Florida Statutes. The basis of jurisdiction is diversity.

Case No. 8:13-CV-365-T-17AEP

Plaintiff Bottini moves for entry of partial summary judgment on the binding effect of the verdict in the Underlying Action, Case No. 08-8851 in Hillsborough County Circuit Court, Mary Bottini, as Personal Representative of the Estate of Gerard Bottini v. GEICO General Insurance Company and Marissa D. Pensa. A final judgment in the amount of $50,000.00 (the UM policy limits) was entered against Defendant GEICO General Insurance Company ("GEICO"). The jury determined the total amount of damages to be $30,872,266.00; after a net set off of $1,040,000.00, the full amount of Plaintiff's damages resulting from the death of the decedent is $29,832,266.00. (Dkt. 1-7). The Second District Court of Appeal affirmed the final judgment in the amount of $50,000.00 against Defendant GEICO.

Plaintiff Bottini argues that the jury's verdict in the Underlying Action, after setoffs, is binding for the purpose of determining the damages recoverable by Plaintiff under Sec. 627.727(10), Florida Statutes. Plaintiff argues that the jury's verdict is binding according to Florida case law, legislative intent, and the doctrine of collateral estoppel.

Defendant GEICO has responded in opposition to Plaintiff's Motion; Defendant argues that the Court must deny Plaintiff's Motion for Partial Summary Judgment. Defendant GEICO argues that the Court has no authority to find that the verdict reached by the jury in the Underlying Action constitutes a measure of damages in this bad faith case. Although Florida law provides that Plaintiff Bottini will be entitled to recover the full amount of her damages in the event Plaintiff prevails in the bad faith action, the applicable case law and statute do not specify the manner in which those damages should be determined.

Defendant GEICO argues that: 1) the underlying UM jury's verdict does not constitute the proper measure of damages in a subsequent first party bad faith action; 2) GEICO's right to procedural due process would be violated if the Court were to hold

2

Case No. 8:13-CV-365-T-17AEP

that the underlying jury's verdict is binding in this bad faith action; 3) collateral estoppel does not bind GEICO or the Court to the underlying jury verdict; and 4) GEICO was denied appellate review of the jury verdict; 5) GEICO did not waive any objections to the scope of appellate review; 6) the Court should reject Plaintiff's public policy argument.

I. Standard of Review

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

> The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The appropriate substantive law will guide the determination of which facts are material and which facts are...irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  See Anderson, 477 U.S. at 248. But, "[i]f the evidence is merely colorable...or is not significantly probative...summary judgment may be granted."  id. at 249-50.

3

Case No. 8:13-CV-365-T-17AEP

II. Controlling Principles of Florida Law

1. Jury's Determination of Negligence and Compensatory Damages

Where material facts are disputed, negligence is a question of fact to be resolved by the jury.   Sec. 768.21, Florida Statutes, specifies the damages recoverable for wrongful death.   The jury in the Underlying Action determined negligence and compensatory damages.   The verdict includes, inter alia, amounts for loss of companionship and protection, loss of parental companionship, instruction and guidance, and for pain and suffering.   There is no objective standard which can precisely measure these damages; under Florida law, the jury, guided by its judgment and everyday life experiences, determines what amount is fair.   Angrand v. Key, 657 So.2d 1146, 1149 (Fla. 1995).   The objective is to make the plaintiff whole.   Sheely v MRI Radiology Network, P.A., 505 F.3d 1173, 1203 (11th Cir. 2007)(compensatory damages designed to "make good the wrong done"; holding emotional distress damages available for intentional violations of Rehabilitation Act).

2. Remittitur

Defendant GEICO moved for a remittitur in the Underlying Action.   Pursuant to Sec. 768.043, Florida Statutes, the trial court reviews the amount of the award to determine if the amount is clearly excessive in light of the facts and circumstances presented to the trier of fact.   Sec. 768.043(3) explains:

> 3) It is the intent of the Legislature to vest the trial courts of this state with the discretionary authority to review the amounts of damages awarded by a trier of fact, in light of a standard of excessiveness or inadequacy. The Legislature recognizes that the reasonable actions of a jury are a fundamental precept of American jurisprudence and that such actions should be disturbed or modified only with caution and discretion. However, it is further recognized that a review by the courts in accordance

4

Case No. 8:13-CV-365-T-17AEP

with the standards set forth in this section provides an additional element
of soundness and logic to our judicial system and is in the best interests of
the citizens of Florida.

The determination of whether an award is excessive, and the amount by which

an award of damages exceeds a reasonable amount, requires the trial court to

consider:

1. Whether the amount awarded is indicative of prejudice, passion or
corruption on the part of the trier of fact;

2. Whether it clearly appears that the trier of fact ignored the evidence in
reaching a verdict or misconceived the merits of the case relating to the
amount of damages recoverable;

3. Whether the trier of fact took improper elements of damages into
account or arrived at the amount of damages by speculation or
conjecture;

4. Whether the amount awarded bears a reasonable relation to the
amount of damages proved and the injury suffered;

5. Whether the amount awarded is supported by the evidence and is
such that it could be adduced in a logical manner by reasonable persons.

In this case, the trial court denied Defendant's Motion for Remittitur. By the trial

court's denial, the Court understands that the trial court determined that the amount of

compensatory damages awarded was not clearly excessive in light of the facts and

circumstances presented to the trier of fact.   By the denial of the Motion for Remittitur,

the trial court was required to consider whether the jury took improper elements of

damage into account; the trial court therefore implicitly rejected Defendant's assertion

that the award of compensatory damages includes some amount of punitive damages.

5

Case No. 8:13-CV-365-T-17AEP

3. Motion for New Trial

Defendant GEICO moved for a new trial. The trial court denied Defendant's Motion for New Trial.

"A motion for new trial is directed to the sound, broad discretion of the trial judge, who, because of his contact with the trial and his observation of the behavior of those upon whose testimony the finding of fact must be based, is better positioned than any other one person to fully comprehend the processes by which the ultimate decision of the triers of fact, the jurors, is reached." Cloud v. Fallis, 110 So.2d 669, 673 (Fla. 1959.) "When the trial judge, who must be presumed to have drawn on his talents, his knowledge and his experience to keep the search for truth in a proper channel, concludes that the verdict is against the manifest weight of the evidence, it is his duty to grant a new trial, and he should always do that if the jury has been deceived as to the force and credibility of the evidence, or has been influenced by considerations outside the record." (citations omitted). Id.

"If the issue of an opponent's improper argument [or conduct] has been properly preserved by objection and motion for mistrial, the trial court should grant a new trial if the argument was 'so highly prejudicial and inflammatory that it denied the [objecting] party its right to a fair trial.' " Engle v. Liggett Grp., Inc., 945 So.2d 1246, 1271 (Fla. 2006). "...[I]f the issue of an opponent's improper argument or conduct has not been preserved by contemporaneous objection and motion for mistrial, a new trial will only be warranted when the improper behavior is 'of such a nature as to reach into the validity of the trial itself to the extent that the verdict could not have been obtained but for such comments.'" id. To prevail on a motion for new trial under Murphy v. In'tl Robotic Sys., Inc., 766 So.2d 1010 (Fla. 2000) requires that the complaining party "establish that the [challenged] argument [or attorney misconduct] was (1) improper, (2) harmful, (3) incurable, and (4) so damaging to the fairness of the trial that the public's interest in our

6

Case No. 8:13-CV-365-T-17AEP

system of justice requires a new trial."

A trial judge may order a new trial on the grounds that the verdict is excessive or against the manifest weight of the evidence, or both. A new trial may be ordered on the ground that the verdict is excessive when: 1) the verdict shocks the judicial conscience; or 2) the jury has been unduly influenced by passion or prejudice. Brown v Estate of Stuckey, 749 So.2d 490 (Fla. 1999)(reversing district court, which reversed trial judge's grant of new trial; district court erred in not applying broad discretion standard; clarifying principles to be applied by trial judge when ruling on motion for new trial on the grounds that verdict is against manifest weight of evidence, and the standard to be applied on appeal of grant of new trial) .

A circuit court's order granting a new trial is reviewed for abuse of discretion. The appellate court presumes that the trial court exercised its discretion properly; unless it clearly appears that the circuit court abused its discretion, the appellate court will not disturb the ruling of the trial court. Allstate Ins. Co. v. Manasse, 707 So.2d 1110, 1111 (Fla. 1998). Discretion is abused only where no reasonable person would take the view adopted by the trial court.

In this case, the trial court denied the Amended Motion for New Trial. By the trial court's denial, the Court understands that amount of damages awarded did not "shock the judicial conscience" of the trial court, and the trial court determined that the jury verdict was not awarded by a jury unduly influenced by passion or prejudice.

4. Award of Compensatory Damages Characterized as Punitive Damages

Defendant GEICO asserted on appeal that the award of compensatory damages impermissibly includes a punitive element.

Case No. 8:13-CV-365-T-17AEP

A jury's assessment of compensatory damages is a factual determination.  A jury's award of punitive damages is not a finding of fact, but a private fine intended to punish the defendant and deter future wrongdoing.  Cooper Indus., Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424 (2001).   The Fourteenth Amendment's Due Process Clause imposes substantive limits on the States' discretion, making the Eighth Amendment prohibition against excessive fines and cruel and unusual punishments applicable to the States, Furman v. Georgia, 408 U.S. 238 (1972), and prohibits States from imposing "grossly excessive" punishments on tortfeasors, B.M.W. of North America, Inc. v. Gore, 517 U.S. 559 (1996).

Under Florida law, the award of punitive damages is subject to due process analysis, but the award of compensatory damages  is not. On its face, the jury verdict identifies the elements of damages awarded.  The jury verdict at issue does not award punitive damages.

The Court relies on the categories of damages stated on the jury verdict; the Court cannot speculate about the jury's motivation.

5.  Harmless Error

Sec. 59.041, Florida Statutes,  provides:

No judgment shall be set aside or reversed, or new trial granted by any court of the state in any cause, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence or for error as to any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire case it shall appear that the error complained of has resulted in a miscarriage of justice. This section shall be liberally construed.

In State v. DiGuilio, 491 So.2d 1129, 1138 (Fla.1986)(holding that comments on defendant's silence are subject to harmless-error analysis; receding from per se

8

Case No. 8:13-CV-365-T-17AEP

reversal rule), the Florida Supreme Court explains the harmless error test:

> The harmless error test, as set forth in Chapman and progeny, places the
> burden on the state, as the beneficiary of the error, to prove beyond a
> reasonable doubt that the error complained of did not contribute to the
> verdict or, alternatively stated, that there is no reasonable possibility that
> the error contributed to the conviction.  See Chapman, 386 U.S. at 24, 87
> S.Ct. at 828.  **Application of the test requires not only a close
> examination of the permissible evidence on which the jury could
> have legitimately relied, but an even closer examination of the
> impermissible evidence which might have possibly influenced the
> jury verdict.**

(Emphasis added).  The Florida Supreme Court also includes a summary of various
errors an appellate court may fall into when applying harmless error analysis:

> In his perceptive essay, *The Riddle of Harmless Error,* former Chief
> Justice Traynor addressed various common errors which, historically,
> appellate courts fall into when applying harmless error analysis. The worst
> is to abdicate judicial responsibility by falling into one of the extremes of
> all too easy affirmance or all too easy reversal. Neither course is
> acceptable. The test must be conscientiously applied and the reasoning of
> the court set forth for the guidance of all concerned and for the benefit of
> further appellate review. The test is not a sufficiency-of-the-evidence, a
> correct result, a not clearly wrong, a substantial evidence, a more
> probable than not, a clear and convincing, or even an overwhelming
> evidence test. Harmless error is not a device for the appellate court to
> substitute itself for the trier-of-fact by simply weighing the evidence. The
> focus is on the effect of the error on the trier-of-fact. The question is
> whether there is a reasonable possibility that the error affected the verdict.
> The burden to show the error was harmless must remain on the state. If
> the appellate court cannot say beyond a reasonable doubt that the error
> did not affect the verdict, then the error is by definition harmful. This rather
> truncated summary is not comprehensive but it does serve to warn of the
> more common errors which must be avoided.

DiGuilio at 1138-1139.

In Damico v. Lundberg, 379 So.2d 964, 965 (Fla. 2d DCA 1979), the harmless

9

Case No. 8:13-CV-365-T-17AEP

error test is stated in different terms:

> Error is reversible only when, considering all the facts peculiar to the
> particular case under scrutiny, it is reasonably probable that a result more
> favorable to the appellant would have been reached if the error had not
> been committed.  3 Fla. Jur.2d  499, Stecher v. Pomeroy, 253 So. 2d
> 421, 422 (Fla. 1971).

This standard implies that the appellate court will consider all the facts, and then

determine the probability of a different outcome without the alleged error.


The harmless error test as described in DiGuilio and Damico requires the

appellate court to consider the evidence, and assess the effect of impermissible

evidence, or challenged conduct.


III.  Discussion


A.  Verdict in Underlying UM Action as Measure of Damages Recoverable
    Under Sec. 627.727(10), F.S.

    Sec. 627.727(10) provides:


> (10) The damages recoverable from an uninsured motorist carrier in an
> action brought under S. 624.155 shall include the total amount of the
> claimant's damages, including the amount in excess of the policy limits,
> any interest on unpaid benefits, reasonable attorney's fees and costs, and
> any damages caused by a violation of a law of this state.  The total
> amount of the claimant's damages is recoverable whether caused by an
> insurer or by a third-party tortfeasor.


Plaintiff Bottini argues that the Florida Supreme Court has held that the damages

recoverable under Sec. 627.727(10) are the damages determined in the underlying UM

suit, based on State Farm Mutual Automobile Insurance Company v. Laforet, 658 So.2d

55 (Fla. 1995)(holding Sec. 627.727(10) could not be applied retroactively).  In Laforet,

Case No. 8:13-CV-365-T-17AEP

the Florida Supreme Court explains that the Florida Legislature amended Sec. 627.727, Fla. Stat. in reaction to McLeod v. Continental Insurance Co., 591 So.2d 621 (Fla. 1992) (holding excess judgment was not an element of damages recoverable for first-party bad faith).  Plaintiff argues, inter alia,  that the Florida Supreme Court defined "excess judgment" to mean the excess portion of the verdict returned in the underlying case, and by enacting Sec. 627.727(10), the Legislature eliminated the distinction between the damages available in first-party cases and the damages available in third-party cases.

In Laforet, the Florida Supreme Court found that Sec. 627.727(1) is penal rather than remedial:

> Just because the Legislature labels something remedial, however, does not make it so....In fact, in McLeod, we signified a contrary conclusion by finding that the imposition of the amount of the excess judgment as damages would be "analogous to imposing a penalty or punitive damages on the insurer."...Further, in addition to imposing a significant penalty on all insurers found guilty of bad faith, section 627.727(10) is an entirely new provision; it would apply to all actions brought under section 625.155 since its effective date in 1982 were it to be applied retroactively; and it significantly alters the language used to determine damages.  By implementing section 627.727(10), the Legislature is in essence subjecting insurance companies in first-party bad faith actions to two penalties because, not only are they subject to punitive damages for the willful and reckless refusal to pay a claim, they are also subject to a penalty for the wrongful failure to pay a claim.  This means that an insurance company found to have acted in bad faith in a first-party action may now be liable for: (1) damages proximately caused by the bad faith including interest, attorney's fees, and costs; (2) a penalty consisting of the entire amount of the excess judgment without regard to proximate causation; and (3) the additional penalty of punitive damages when the bad faith is found to be willful and reckless.

Laforet, 658 So.2d at 61.   Plaintiff Bottini also cites Allstate Indem. Co. v. Ruiz, 899 So.2d 1121, 1128 n. 2 (Fla. 2005) and Time Ins. Co. v. Burger, 712 So.2d 389, 392

Case No. 8:13-CV-365-T-17AEP

(Fla. 1998). The Court notes that the Florida Supreme Court did not rule on the same
issue before this Court in the above cases; however, the Court views Laforet as
strongly persuasive.

Plaintiff Bottini argues that the concurring opinion in GEICO General Ins. Co. v.
Bottini, 93 So.3d 476, 478 (Fla. 2d DCA 2012) implies an unresolved question of how
damages recoverable Sec. 627.727(10) should be determined. In that opinion, Judge
Altenbernd states "The statute does not explain how the finder of fact in the next lawsuit
determines the 'total amount' of the claimant's damages." Plaintiff argues that this
opinion is not binding authority, and does not supersede Laforet.

In GEICO General Ins. Co. v. Bottini, in his concurring opinion, Judge
Altenbernd states:

> I concur in the affirmance of this judgment. I write to explain
> that I have reviewed only the judgment on appeal. In my
> opinion, this court's scope of review gives it no power to
> consider alleged errors the verdict that do not affect the
> judgment. Accordingly, I conclude that there is no proper
> legal basis to reverse the $50,000 judgment in this case,
> and I express no opinion as to the correctness of the jury's
> verdict awarding $30,872,266.
>
> ......
>
> On appeal, GEICO has argued several issues that might
> affect the judgment as to liability and comparative
> negligence, but this court has found no preserved reversible
> error on those issues. It has also argued that the verdict is
> excessive and that it was influenced by improper arguments.
> However, GEICO concedes that after finding liability, a jury
> would be free under the facts of this case to award a total of
> $1,050,000 even in the fairest of trials. Accordingly, no
> alleged error raised by GEICO can be a harmful error as to
> the judgment totaling $50,000.

12

Case No. 8:13-CV-365-T-17AEP

> This appeal is motivated by the lawsuit that both parties
> know will follow.  The Estate will sue GEICO under section
> 624.155, Florida Statutes (2006), for failure to settle this
> claim at an earlier time.  The available damages in that
> action are specified by the legislature.  Sec. 627.727(10),
> Florida Statutes (2006), states:

> The damages recoverable from an uninsured motorist
> carrier in an action brought under s. 624.155 shall include
> the total amount of the claimant's damages, including the
> amount in excess of the policy limits, any interest on unpaid
> benefits, reasonable attorney's fees and costs, and any
> damages caused by a violation of a law of this state.  The
> total amount of the claimant's damages is recoverable
> whether caused by an insurer or by a third-party tortfeasor.

> (Emphasis added.)  The statute does not explain how the
> finder of fact in the next lawsuit determines the "total
> amount" of the claimant's damages.  Not unreasonably, both
> sides in this appeal anticipate that the Estate will attempt to
> use the verdict in this case as evidence of the total amount
> of damages in the next lawsuit. (FN 1).

> FN 1: In a standard "bad faith" case involving a
> liability insurance company, the verdict in excess of the
> insurance limits results in a judgment against the defendant,
> but not against his or her liability insurance company.  Only
> in a lawsuit against the plaintiff's own insurer, a "first-party"
> insurance claim, does the excess verdict result in no
> judgment of any sort.  Thus, the problem presented by this
> case appears unique to bad faith claims arising from
> coverage under section 627.727.

> Constitutionally, this court is given power to review final
> judgments for reversible error.  We can also write an opinion
> affirming a judgment as to issues that, if we were to reach
> an opposite result, would lead to a reversal of the judgment.
> But I am unconvinced that we have a scope of review that
> allows us to rule on issues that do not and cannot affect the
> judgment on appeal.  In this case, given that we decided to
> affirm on the issues relating to liability, GEICO essentially
> wants this court to write an opinion that affirms the

13

Case No. 8:13-CV-365-T-17AEP

> judgment, but "reverses" the verdict as to elements of
> damage not included within the judgment. I simply conclude
> that this court does not have the power to issue such an
> opinion. The fact that such an opinion might be convenient
> for purposes of the next lawsuit or facilitate its settlement
> does not change the authority given to me under the Florida
> Constitution.
>
> Accordingly, this concurrence permits both sides to know
> that at least one judge on this panel has not decided that the
> verdict is correct or incorrect as to damages awarded in
> excess of $1,050,000 because that issue is not within our
> permissible scope of review. If I am refusing to do that
> which the law requires me to do, I would assume that by writ
> of mandamus the supreme court could order me to conduct
> such a review. If so ordered, I would perform that review.

Plaintiff Bottini argues that the opinion in King v. Government Employees

Insurance Co., 2012 WL 4052271, *5 (M.D. Fla. 9/13/2012) is not accurate, in light of

the holding in Laforet, as is the order entered in Harris v. GEICO General Insurance

Co., 2013 WL 4463836, *8 (S.D. Fla. 8/7/2013).


Defendant GEICO responds that the only controversy between Plaintiff Bottini

and Defendant GEICO in the Underlying Action was whether Plaintiff was entitled to the

$50,000 UM benefits under the policy, and a judgment in the amount of $50,000 was

entered. Defendant GEICO argues that the finder of fact in the bad faith case

determines the amount of damages, not the court in the Underlying Action.

Government Employees Insurance Co. v. King, 68 So.3d 267 (Fla. 2d DCA

2011)(denying motion for attorney's fees and receding from opinion authorizing

procedure of entering conditional judgments; explaining that the trial court in a

subsequent bad faith action determines whether earlier appellate attorney's fees are an

element of damages awardable).

14

Case No. 8:13-CV-365-T-17AEP

Before the entry of the jury verdict, Plaintiff's entitlement to UM benefits of $50,000 could not be determined.   If the jury had determined no liability for negligence, or determined compensatory damages of less than $50,000, a different Final Judgment would have been entered.   Once the jury determined liability and compensatory damages, Plaintiff could prove she was legally entitled to recover from the tortfeasor, and therefore from the UM insurer, Defendant GEICO.   The Final Judgment in the Underlying Action sets the amount recoverable from Defendant GEICO at the UM Policy limits, documents the total amount of compensatory damages awarded to Plaintiff and applies the applicable setoff, to specifically identify the recoverable damages in excess of the policy limits.   Defendant GEICO obtained review of the amount of the jury verdict through Defendant's Motion for Remittitur and Motion for New Trial, and the appeal of the trial court's denial of Defendant's Motions.   The fact that the Second District Court of Appeal did not address this issue in an opinion does not render the decision affirming the trial court any less final, and the per curiam disposition of the Second District Court of Appeal does not mean that issues raised by Defendant GEICO were not considered.

The Court agrees that, in the bad faith case, a cause of action distinct from the Underlying Action, the finder of fact determines the damages recoverable in the event that it is determined that Defendant GEICO has violated any statutory duties pursuant to Sec. 624.155, Florida Statutes.   In Sec. 627.727(10), the Florida Legislature has defined the damages recoverable from a UM carrier in an action brought under Sec. 624.155 to include "the total amount of the claimant's damages, including the amount in excess of the policy limits."   A first party bad faith case cannot be brought before there has been a final determination of liability as to the uninsured tortfeasor, and the extent of the plaintiff's damages. The "extent of the plaintiff's damages" is a necessary element of successfully pleading a first-party bad faith claim. See Porcelli v. OneBeacon Ins. Co., 635 F.Supp.2d 1312, 1316 (M.D. Fla. 2008)(citing Blanchard v. State Farm Mut. Auto. Ins. Co., 575 So.2d 1289, 1291 (Fla. 1991); Vest v. Travelers

15

Case No. 8:13-CV-365-T-17AEP

Ins. Co., 753 So.2d 1270, 1275-76 (Fla. 2000)). The extent of the plaintiff's damages, including the amount in excess of the policy limits, caused by the uninsured tortfeasor is one element of damages recoverable in a subsequent bad faith claim; the total damages recoverable may also include interest on unpaid benefits, reasonable attorney's fees and costs, and any damages caused by a violation of a law of Florida. The language of Sec. 627.727(10) is plain, and, in Laforet, the Florida Supreme Court explained how the Florida Supreme Court would apply the statute, albeit in dicta.

B.   Appellate Review

Plaintiff Bottini argues that the majority opinion of the Second District Court of Appeal did not refuse to review Defendant GEICO's claims of error.

Defendant GEICO argues that Defendant GEICO was denied appellate review. Defendant GEICO appealed the denial of Defendant's Motion for Remittitur and Amended Motion for New Trial. Defendant GEICO asserted on appeal the trial court abused its discretion in denying Defendant's request for a new trial, on the basis that the jury's damage award of $30 million was excessive, and against the manifest weight of the evidence. Defendant GEICO also asserted that the trial court abused its discretion in denying Defendant's request for new trial because Plaintiff's counsel: 1) made improper and inflammatory arguments during closing argument, and 2) engaged in character assassination of tortfeasor Geisbert. (Dkts. 28-1, Brief of Appellant; Dkt. 28-17, Brief of Appellee; Dkt. 28-18, Appellant's Reply Brief).

The majority opinion of the Second District Court of Appeal states:

> The jury verdict found that the Estate's damages were $30,872,266. But the judgment amount entered by the trial court against Geico is $50,000, based on the applicable policy limits. Based on the evidence presented, we are

16

Case No. 8:13-CV-365-T-17AEP

>satisfied that even if Geico were correct that errors may
>have affected the jury's computation of damages, in the
>context of this case and the amount of the judgment, any
>such errors were harmless.  Thus, we do not address further
>Geico's claims of error.
>
>Affirmed.

(Dkt. 28-19).

Defendant GEICO raised the issue of the amount of damages awarded to Plaintiff Bottini on appeal, in the context of the trial court's denial of Defendant GEICO's motion for new trial; the majority opinion, which is binding, indicates that the Second District Court of Appeal considered the issue, but determined that any errors were harmless, and affirmed the trial court.

As other courts have observed, although parties may not appeal from verdicts, appellate courts can and do consider potential errors in verdicts.  See Batchelor v. Geico Cas. Co., 2014 WL 39-6312, 5 (M.D. Fla. 2014)(citing Normius v. Eckerd Corp., 813 So.2d 985, 988 (Fla. 2d DCA 2002) (review of order granting remittitur) and Duclos v. Richardson, 113 So.3d 1001, 1003-04 (Fla. 1st DCA 2013)(review of order granting jnov)).

Based on the undisputed record, the Court finds that Defendant GEICO was not denied appellate review of the amount of damages awarded to Plaintiff in the Underlying Action.

C.  Waiver of Objection to Scope of Appellate Review

Plaintiff Bottini argues that Defendant GEICO has waived any right to complain since Defendant chose not to take any steps to seek further appellate review.  Plaintiff

Case No. 8:13-CV-365-T-17AEP

argues that Defendant GEICO consciously chose to forego all available procedures i.e. no motion for rehearing, no motion for clarification and no petition for mandamus.

Plaintiff further argues that the decision of the Second District Court of Appeal conflicts with decisions of other courts of appeal as to review of errors that affected the excess portion of the verdict: Christiani v. Popovich, 363 So.2d 2 (Fla. 1st DCA 1978) and Nationwide Mut. Fire Ins. Co. v. Darragh, 95 So.3d 897 (Fla. 5th DCA 2012).

Defendant GEICO responds that Defendant has not waived its objection to the scope of appellate review.

The mandate of the Second District Court of Appeal affirmed the trial court. It is not disputed that Defendant GEICO did not seek further review. The Court notes that Defendant GEICO submitted itself to the jurisdiction of the Hillsborough County Circuit Court, and Defendant GEICO participated fully in the Underlying Action. The trial court had discretion to review the jury verdict for excessiveness, but denied Defendant's Motion for Remittitur and for New Trial. Defendant GEICO appealed, but the Second District Court of Appeal, finding no reversible error, affirmed the trial court.

The Court finds that Defendant GEICO did not pursue any further means of review after the appeal in the Second District Court of Appeal, and therefore the Final Judgment of the trial court stands as final.

D. Collateral Estoppel

Plaintiff Bottini argues that the verdict from the Underlying Action is binding through collateral estoppel. Plaintiff Bottini argues that Florida courts give collateral estoppel effect to judgments that are affirmed without an opinion or "PCA."

18

Case No. 8:13-CV-365-T-17AEP

Defendant GEICO responds that collateral estoppel does not bind the parties to the verdict amount because the verdict was not a final judgment accorded conclusive effect. See King v. Government Employees Insurance Co., 2012 WL 4052271, *5 (M.D. Fla. 9/13/2012). Defendant GEICO argues that the identical issue has not been fully litigated, and a final decision has not been rendered by a court of competent jurisdiction.

"Under the Full Faith and Credit Act, 28 U.S.C. § 1738, a federal court must 'give preclusive effect to a state court judgment to the same extent as would courts of the state in which the judgment was entered.' " Brown v. R. J. Reynolds Tobacco Co., 611 F.3d 1324, 1331 (11th Cir. 2010). The Court gives preclusive effect to a state court judgment if: "(1) the courts of the state from which the judgment emerged would do so themselves; and (2) the litigants had a full and fair opportunity to litigate their claims and the prior state proceedings otherwise satisfied the applicable requirements of due process." Quinn v. Monroe Cty., 330 F.3d 1320, 1329 (11th Cir. 2003). In Florida, "collateral estoppel applies if (1) an identical issue, (2) has been fully litigated, (3) by the same parties or their privies, and (4) a final decision has been rendered by a court of competent jurisdiction." Id.; see Essenson v. Polo Club Assocs., 688 So.2d 981, 983 (Fla. 2d DCA 1997). Collateral estoppel does not require prior litigation of an entire claim, only a particular issue. Rice-Lamar v. City of Fort Lauderdale, 853 So.2d 1125, 1131 (Fla. 4th DCA 2003).

"[T]he offensive use of collateral estoppel calls for the courts to use special care in examining the circumstances to ascertain that the defendant has in fact had a full and fair opportunity to litigate and that preclusion will not lead to unjust results." Johnson v. U.S., 576 F.2d 606, 614 (5th Cir. 1978). One of the most important considerations is whether, at the time of the earlier action, the party could foresee that facts subject to estoppel could be important in future litigation. Id at 615.

Case No. 8:13-CV-365-T-17AEP

Florida courts have looked to the Second Restatement of Judgments in applying collateral estoppel. Cook v. State, 921 So.2d 631, 634 (Fla. 2d DCA 2005). In Cook, the Court notes the following:

> When there is a lack of total identity between the particular matter presented in the second action and that presented in the first, there are several factors that should be considered in deciding whether for purposes of the rule of this Section the "issue" in the two proceedings is the same, for example: Is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first? Does the new evidence or argument involve application of the same rule of law as that involved in the prior proceeding? Could pretrial preparation and discovery relating to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second? ...

> Sometimes, there is a lack of total identity between the matters involved in the two proceedings because the events in suit took place at different times. In some such instances, the overlap is so substantial that preclusion is plainly appropriate.... Preclusion ordinarily is proper if the question is one of the legal effect of a document identical in all relevant respects to another document whose effect was adjudicated in a prior action.

Restatement (Second) of Judgments § 27 cmt. c (1982).

Differences in the burden of proof or persuasion between the initial proceeding and the subsequent proceeding may affect whether the doctrine of collateral estoppel will be applied; Florida also recognizes a "manifest injustice exception" to the doctrine of collateral estoppel. This exception comes into play when application of the doctrine "would defeat the ends of justice." The manifest injustice exception recognized in Florida law parallels the exception in Restatement (Second) of Judgments Section 28(5)(a) for circumstances where "[t]here is a clear and convincing need for a new determination of the issue ... because of the potential adverse impact of the determination on the public interest."

Case No. 8:13-CV-365-T-17AEP

When deciding what facts have been litigated and adjudicated in prior proceedings, courts often look to the verdict forms to help decide the issue. See Acadia Partners, L.P. v. Tompkins, 673 So.2d 487, 488-89 (Fla. 5ᵗʰ DCA 1996). The verdict form in the Underlying Action reflects that the jury determined the liability of the tortfeasors, and the amount of damages caused by their negligence. Defendant GEICO "stepped into the shoes" of the tortfeasor and participated fully in the Underlying Action. Although the Final Judgment was limited to Defendant's policy limits of $50,000, the Final Judgment also includes a statement of the jury's determination of the total amount of damages, and states that all claims that Plaintiff may have for damages pursuant to Sec. 624.155 are preserved and not affected by the Final Judgment. It was foreseeable that the facts subject to estoppel could be important in future litigation. If this case involved a claim of bad faith following an excess judgment against the insured as tortfeasor, there would be no question that, following an appeal of a final judgment, the Final Judgment of the trial court established the amount of damages in excess of the policy limits. The Florida Legislature has chosen to make the amount of damages in excess of the policy limits identical in first party claims and third party claims.

The Court relies on the plain language of the statute and on Florida case law in adjudicating Plaintiff's Motion. The amount of damages caused by the tortfeasor was necessarily determined in the Underlying Action, in which Defendant GEICO participated fully. The due process right underlying the issue of whether a litigant has a full and fair opportunity to litigate is whether the litigant has the opportunity to be heard. Defendant GEICO raised the issue of the alleged excessive amount of damages in Defendant's Motion for Remittitur and Motion for New Trial, and on appeal. Defendant GEICO did not pursue further relief after the decision of the Second District Court of Appeal. While this case is distinct from the Underlying Action, in light of Sec. 627.727(10), Florida Statutes, it was foreseeable that the amount of damages could be important in future litigation. There was no failure of due process, where Defendant GEICO had the opportunity to, and did, raise the issue of excessive damages by post-

21

Case No. 8:13-CV-365-T-17AEP

trial motions and on appeal.    Defendant GEICO could have taken further steps to
obtain review of the decision of the Second District Court of Appeal, but did not do so.
The Court does not know of any factor, including a failure of due process, which would
render the application of Florida's  collateral estoppel doctrine inappropriate.
Accordingly, it is


        **ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Dkt. 29) as to
the binding effect of the underlying verdict as to liability and damages is **granted**.


        **DONE and ORDERED** in Chambers, in Tampa, Florida on this
23rd day of September, 2014.




ELIZABETH A. KOVACHEVICH
United States District Judge


Copies to:
All parties and counsel of record

22

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARY BOTTINI, etc.,

        Plaintiff,

v.                                CASE NO.  8:13-CV-365-T-17AEP

GEICO GENERAL
INSURANCE COMPANY,

        Defendant.

_____/


ORDER

    This cause is before the Court on:

| Dkt. 100 | Motion for Reconsideration re Order on Motion for Partial Summary Judgment (Dkt. 99) or, in the Alternative, to Certify the Order for Interlocutory Appeal |
| Dkt. 101 | Response |
| Dkt. 106 | Notice of Supplemental Authority |

    Defendant Geico General Insurance Company seeks reconsideration of the Court's Order (Dkt. 99) granting Plaintiff's Motion for Partial Summary Judgment.  In the alternative, Defendant moves to certify the Order for interlocutory appeal.

    Plaintiff Mary Bottini, as Personal Representative of the Estate of Gerard Bottini, opposes Defendant Geico's Motion.  Plaintiff argues that Defendant rehashes the same arguments the Court already considered and rejected, and has added an entirely new argument which it could have raised earlier, but did not.  Plaintiff further argues that certification for interlocutory appeal is not appropriate, in that the issue Defendant seeks to certify is not controlling, as it would not resolve the issue of bad faith; there are no substantial grounds for difference of opinion, because a binding decision of a Florida appellate court has held the underlying verdict is binding, and certification would not

Case No. 8:13-CV-365-T-17AEP

advance the termination of the litigation, in that this case is set for trial in January, 2015.

The Court notes that the trial of this case has been rescheduled to February 2, 2015, and this case is a forty-hour jury trial.

I. Standard of Review

The decision to grant a motion for reconsideration is within the sound discretion of the trial court and will only be granted to correct an abuse of discretion.  Region 8 Forest Serv. Timber Purchases Council v. Alcock, 993 F.2d 800, 806 (11th Cir. 1993). There are three bases for reconsidering an order: " (1) an intervening change in controlling law; (2) availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice.  Sussman v. Salem, Saxon & Nielsen, P.A., 153 F.R.D. 689, 694 (M.D. Fla. 1994).  See also Lamar Adver. of Mobile, Inc. v. City of Lakeland, 189 F.R.D. 480, 489 (M.D. Fla. 1999).

Furthermore, a motion for reconsideration does not provide an opportunity to simply reargue, or argue for the first time, an issue the Court has once determined. Court opinions are "not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." Quaker Alloy Casting Co. v. Gulfco Indus., Inc., 123 F.R.D. 282, 288 (N.D. Ill. 1988).  The reconsideration of a previous order is an "extraordinary remedy" and "must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Ludwig v. Liberty Mutual Fire Ins. Co., 2005 WL 1053691 (citing Lamar, 189 F.R.D. at 489 (M.D. Fla. 1999)).

Case No. 8:13-CV-365-T-17AEP

II. Discussion

A. Defendant's Motion

Defendant Geico requests reconsideration of the Court's previous decision (Dkt. 99) as Defendant Geico will suffer a due process violation that is so egregious that it constitutes manifest error of law and fact. Defendant Geico argues that this Court misinterpreted the opinion of the Second District Court of Appeal in Bottini v. GEICO Gen. Ins. Co., 93 So.3d 476 (Fla. 2D DCA 2012). Defendant Geico, in a footnote, suggests that the Court is condoning Plaintiff's violation of and disregard for the Florida Rules of Procedure and Florida case law prohibiting inappropriate and unfair trial practice.

Defendant Geico argues that the errors of the trial court that Defendant Geico raised on appeal were not reviewed by the appellate court due to the amount of the judgment. Defendant Geico contends that the law of the case mandates that Geico should not be bound to the verdict as to the measure of damages in this action as Geico was denied appellate review of same. Defendant Geico argues that if the Second District Court of Appeal had been able to review the errors raised by Defendant Geico on appeal, such as the inflammatory, prejudicial closing argument of Plaintiff's counsel, the Second District Court of Appeal would have reversed the jury's verdict. Defendant Geico argues it was entitled to a new trial because the trial court erred in improperly allowing inflammatory, prejudicial comments in closing argument, improperly allowing bad character evidence as to the alleged tortfeasor, and improperly denying Geico's motion for new trial due to the excessive verdict. Geico argues these were not reviewed because they did not affect the judgment. Geico further argues that the prejudice to Geico for this Court to determine that damages will not be tried in the instant bad faith action is far outweighed by any slight prejudice to Plaintiff, as Plaintiff has litigated and prepared this case as if damages would be litigated at trial. Defendant

3

Case No. 8:13-CV-365-T-17AEP

Geico further argues that the Eleventh Circuit Court of Appeals has recognized that the issue of damages litigated in the underlying UM action is separate and distinct from the issue of damages in a subsequent first-party bad faith action, and therefore the Court erred in finding that collateral estoppel applies to the issue of damages.

Defendant Geico requests that the Court reconsider its ruling, hold that the verdict in the Underlying Action is not binding as a measure of damages in Plaintiff's first-party bad faith action against Geico, or, in the alternative, certify the Order for interlocutory appeal under 28 U.S.C. Sec. 1292(b).

B. Plaintiff's Response

Plaintiff Bottini responds that Defendant's Motion for Reconsideration should be denied. Plaintiff argues that Defendant merely disagrees with the Court's interpretation of the Bottini decision, and if the Court considers the merits of Defendant's argument, the Court should again reject it as unfounded. Plaintiff further argues that opinion of the Fourth District Court of Appeal in GEICO General Insurance Co. v. Paton, 2014 WL 4626860 (Fla. 4th DCA Sept. 17, 2014) holds that the jury's determination of damages in an underlying UM case is binding against the insurance company in a subsequent bad faith trial, and explicitly rejects Defendant Geico's position that Defendant Geico suffers a due process violation if it is bound to the underlying verdict, as the Second District Court of Appeal was not "unable" to review Geico's claims of error. Plaintiff further responds that the law of the case doctrine does not apply, the relief sought by Defendant violates the Rooker-Feldman doctrine, and, if this Court could review the decision of the Second District Court of Appeal, Defendant did not provide a sufficient record that would permit the Court to do so. Plaintiff further responds that Defendant Geico's prejudice-balancing error is a new argument that could have been raised before, and is without merit. Plaintiff further responds that, in King v. Government Employees Insurance Co., 2014 WL 4357480 (11th Cir. Sept. 4, 2014), the Eleventh

4

Case No. 8:13-CV-365-T-17AEP

Circuit Court of Appeals held that the question of bad faith was not at issue in the
underlying UM action, and declined to rule on whether the verdict from an underlying
UM action is binding in a subsequent action, as the jury found no bad faith.  Plaintiff
Bottini opposes certification for interlocutory review.

C.  Analysis

1.  Procedural Due Process

        The Court has given further consideration to the issues raised by Defendant
Geico, but this consideration has not altered the Court's conclusions.

        Defendant argues that the Court has misinterpreted the following ruling of the
Second District Court of Appeal:

> "Geico General Insurance Company **raised five issues in this appeal.
> We conclude that none of the issues warrants reversal**.  We note that
> Geico's arguments include claims of error that impacted the amount of
> damages determined by the jury.  The jury verdict found that the Estate's
> damages were $30,872,266.  But the judgment amount entered by the
> trial court against Geico is $50,000, based on the applicable insurance
> policy limits.  **Based on the evidence presented, we are satisfied that
> even if Geico were correct that errors may have affected the jury's
> computation of damages, in the context of this case and the amount
> of the judgment, any such errors were harmless.**  Thus, we do not
> address further Geico's claims of error."

(Emphasis added).   Defendant Geico has argued that if the Second District Court of
Appeal had been able to review the trial errors Defendant raised on appeal, the Second
District Court of Appeal would have reversed.  Perhaps Defendant Geico has a psychic
hotline to the Second District Court of Appeals, but the undersigned does not.  The
undersigned looks to the wording of the opinion, and the context in which the issues are
raised.  The opinion of the Second District Court of Appeal is brief, without a lot of room

Case No. 8:13-CV-365-T-17AEP

for interpretation. Every word counts. The Court understands the ruling of the Second
District Court of Appeal to say two things:

> 1.  Of the five issues raised in the appeal, none of the issues warrants
> reversal;
>
> 2.  As to the claims of error that impacted the amount of damages
> determined by the jury, if errors are present, the errors are harmless.

Defendant Geico raised the issue of the alleged violation of Defendant's
constitutional right to procedural due process in the context of Defendant's response to
Plaintiff's Motion for Partial Summary Judgment as to Binding Effect of Verdict. In
responding to Plaintiff's Motion for Partial Summary Judgment, Defendant argued that
the Second District Court of Appeal reviewed only the $50,000 judgment, not the
portion of the verdict which exceeded the judgment, such that Defendant Geico has not
had an opportunity to be heard regarding its allegations of error at trial, and therefore
the verdict cannot be binding in this case without violating Defendant's right to
procedural due process.

As to a claim of deprivation of procedural due process, the constitutional
violation is not complete when the deprivation of due process occurs; it is not complete
unless and until the State fails to provide due process.    McKinney v. Pate, 20 F.3d
1550, 1557 (11th Cir. 1994). In this case, a property interest is at stake. If the verdict in
the Underlying Action is binding, and a jury upholds Plaintiff's claim of bad faith,
Defendant Geico would be liable to pay the total damages as determined at trial. The
plaintiff must show: 1) they had a property interest which was interfered with by the
state and 2) the state failed to use constitutionally sufficient procedures in depriving the
plaintiff of that right. The constitutionality of the state procedures must show a violation
of the U.S. Constitution. The U.S. Constitution requires some kind of hearing before
the State deprives a person of liberty or property; the Supreme Court has held that, in

6

Case No. 8:13-CV-365-T-17AEP

some circumstances, "a statutory provision for a post deprivation hearing, or a common law tort remedy for erroneous deprivation, satisfies due process. Zinermon v. Burch, 494 U.S. 113, 127-128 (1990). Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation, of life, liberty, or property." Arrington v. Helms, 438 F.3d 1336, 1347 (11th Cir.2006)

In the Court's prior order, the Court considered the actual "process" accorded to Defendant. The Court also notes the discussion in Horton v. Board of County Comm'rs of Flagler County, 202 F.3d 1297, 1300 (11th Cir. 2000):

> The McKinney rule is not micro in its focus, but macro. It does not look to the actual involvement of state courts or whether they were asked to provide a remedy in the specific case now before the federal court. Instead, the McKinney rule looks to the existence of an opportunity–to whether state courts, if asked generally would provide an adequate remedy for the procedural violation the federal court plaintiff claims to have suffered. If state courts would, then there is no federal due process violation regardless of whether the plaintiff has taken advantage of the state remedy or attempted to do so.

The Eleventh Circuit Court of Appeals explains that McKinney is based on a recognition that the process a state provides is not only that employed by the board, agency, or other governmental entity whose action is in question, but also includes the remedial process state court would provide if asked. McKinney complained of a biased decisionmaker at the board level, but under Florida law an adequate remedy for that could be obtained in the state courts. So, McKinney had an opportunity for procedural due process, and that is all that the Fourteenth Amendment requires.

"Due process," as defined by the United States Supreme Court, is "a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127(1990). To determine whether a constitutional violation of procedural due process occurred, the Court asks what process the State provided, and whether it was

7

Case No. 8:13-CV-365-T-17AEP

constitutionally adequate. The Court applies the balancing test of <u>Matthews v. Eldridge</u>, 424 U.S. 319, 335 (1976), considering:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

As to the risk of erroneous deprivation under the procedures used, the civil trial in the Underlying Action included many means which  minimized the risk of erroneous deprivation.  Defendant had notice of the claims against Defendant, and an opportunity to be heard.  The damages that Plaintiff sought under the Florida Wrongful Death Act are spelled out in Sec. 768.21, <u>Florida</u> <u>Statutes</u>.  Sec. 768.17, <u>Florida</u> <u>Statutes</u>, states the public policy of Florida, and provides for liberal construction.  Throughout the trial, Defendant was represented by counsel, had the opportunity to present witnesses and evidence, to make opening and closing statements to the jury, to raise objections, to make arguments to the trial court and to seek relief from the trial court in accordance with the Florida Rules.  Voir dire, the trial court's cautionary instructions to the jury throughout trial, Defendant's requests for curative instructions, Defendant's motions for a mistrial, and jury instructions prior to deliberation are specific means designed to minimize the risk of erroneous deprivation by avoiding any impairment of the jury's impartiality.  After the jury verdict awarding damages to Plaintiff, Defendant had the opportunity to seek relief from the trial court by filing a motion for new trial, and a motion for remittitur, and had the opportunity to seek relief in the appellate court.   The extent of damages awarded is a factual issue.  The Florida Supreme Court has acknowledged that, although non-economic damages are inherently difficult to measure, the judicial system places great faith in the jury's ability to assess the amount of such damages. As noted in <u>R.J. Reynolds Tobacco Company v. Lyantie Townsend, as Personal</u>

Case No. 8:13-CV-365-T-17AEP

Representative of the Estate of Frank Townsend, 90 So.3d 307 (Fla. 1st DCA 2012):

> "The fact that a damage award is large does not in itself render it
> excessive nor does it indicate that the jury was motivated by improper
> consideration in arriving at the award."And "not every verdict which raises
> a judicial eyebrow should shock the judicial conscience."...A verdict should
> not be declared excessive "merely because it is above the amount which
> the court itself considers the jury should have allowed"....The verdict
> should be disturbed only when "it is so inordinately large as obviously to
> exceed the maximum limit of a reasonable range within which the jury
> may properly operate."...

(Citations omitted). Florida courts are required to closely scrutinize the amount of
damage awards in considering whether an award exceeds a reasonable range,
including whether award is supported by the evidence, whether award bears reasonable
relation to amount of damages proved and injury suffered, and whether the amount of
the award is indicative of prejudice, passion or corruption" on part of the jury.  To
facilitate review, an order granting a new trial must specify the reasons supporting a
determination that the verdict is against the manifest weight of the evidence or
influenced by considerations outside the record.  Wackenhut v. Canty, 359 So.2d 430,
435 (Fla. 1978).


    Defendant's Motion for New Trial was brought pursuant to Florida Rule of Civil
Procedure 1.530(b)(Exhibit 1).  Defendant identified the alleged harmful errors of the
trial court underlying Defendant's request for new trial.  Defendant asserted that, due to
each error, and the cumulative effect of the errors, the jury was unduly influenced by
passion and prejudice, and the verdict was contrary to the manifest weight of the
evidence.  Defendant argued that each alleged trial error, and the cumulative effect of
the alleged trial errors, was sufficiently prejudicial to warrant a new trial.

9

Case No. 8:13-CV-365-T-17AEP

Defendant's Motion for Remittitur was brought pursuant to Sec. 768.74, Florida Statutes (Exhibit 2), and identifies the same factors included in Sec. 768.043, Florida Statutes.  Secs. 768.043 and 768.74, Florida Statutes, acknowledge that reasonable actions of the jury should be disturbed or modified only with caution and discretion. Pursuant to Sec. 768.043, Florida Statutes, the trial court has the authority to review a jury verdict awarding damages to determine if it is clearly excessive in light of the facts and circumstances which were presented to the trier of fact, under the statutory standards expressed therein.  Pursuant to Sec. 767.74, Florida Statutes, the trial court has the authority to review a jury verdict awarding damages to determine if it is excessive in light of the fact and circumstances which were presented to the trier of fact, under the statutory standards expressed therein.  In considering a motion for remittitur, the trial judge's discretion is exercised in the context of determining whether the jury's verdict is against the manifest weight of the evidence, or was influenced by consideration of matters outside the record.   The trial record must affirmatively show the impropriety of the verdict, or there must be an independent determination by the trial judge that the jury was influenced by considerations outside the record.  Ashcroft v. Calder Race Course, Inc., 492 So.2d 1309, 1312 (Fla. 1986).  In ruling on a motion for remittitur, the trial court must specify its reasons for granting such a request.

A trial court has broad discretion in ruling on motions for new trial and mistrial. As to preserved error, the legal standard to determine a motion for new trial based on counsel's improper argument is whether the argument was so highly prejudicial and inflammatory that it denied the opposing party the right to a fair trial.  To determine whether the statements and arguments are prejudicial, the statements and arguments must be placed and evaluated in context.  Context is crucial.  Engle v. Liggett Group, Inc., 945 So.2d 1246, 1271-1272 (Fla. 2006).  Harmfulness in this context also carries a requirement that the comments be so highly prejudicial and of such collective impact as to gravely impair a fair consideration and determination of the case by the jury.  Id. at 1272, n. 14.  When improper argument is made during closing argument, improper

10

Case No. 8:13-CV-365-T-17AEP

evidence is volunteered, or improper evidence is elicited, such improper arguments or
evidence do not necessarily constitute reversible error; all may be cured by an
instruction to the jury at trial to disregard the argument or evidence.  Barry v. GEICO
General Ins. Co., 938 So.2d 613 (Fla. 4th DCA 2006).   If improper argument is not so
egregious as to interfere with the essential justice of the result, a new trial is not
warranted.   Rohrback v. Dauer, 528 So.2d 1362 (Fla. 3d DCA 1988).

On appeal, Defendant asserted the same issues as in the Motion for New Trial
and Motion for Remittitur (Exhibit 3).  As the Second District Court of Appeal explains:

> The primary function of an appellate court is to "determine whether the
> [lower tribunal] made any ruling or conducted the proceedings in a
> manner contrary to established principles of law to the prejudice of the
> appellant. (quoting Carolina Lumber Co. v. Daniel, 97 So.2d 1122, 1124
> (Fla. 1st DCA 1987).  In performing this function, we are constrained by the
> principle that the judgment of a lower tribunal is presumed to be correct
> and the burden is on the appellant or petitioner to demonstrate reversible
> error.  See Applegate v. Barnett Bank, 377 So.2d 150 (Fla. 1979).

Lazzari v. Lin, 884 So.2d 393, 395 (Fla. 2d DCA 2004).

On appeal, the appellate court considers preserved error and fundamental error.
Preserved error is error to which the complaining party objected, or otherwise brought to
the attention of the trial court, and obtained a ruling.   Fundamental error is error which,
although not objected-to at trial,  goes to the foundation of the case or the merits of the
cause of action, or it must be a denial of due process.   Constitutional issues, other than
those which constitute fundamental error, are waived unless timely raised at trial.

Sec. 59.041, Florida Statutes, (Harmless error, effect)  provides:

> No judgment shall be set aside or reversed, or new trial granted by any
> court of this state in any cause, civil or criminal, on the ground of
> misdirection of the jury or the improper admission or rejection of evidence
> or for error as to any matter of pleading or procedure, unless in the
> opinion of the court to which application is made, after an examination of

11

Case No. 8:13-CV-365-T-17AEP

> the entire case it shall appear that the error complained of has resulted in
> a miscarriage of justice.  This section shall be liberally construed.

Appellate courts may consider whether the asserted error is harmful or harmless before determining that a ruling was an error.  The test for harmless error in a civil case in the Second District Court of Appeal was that, for an error to be harmful, it must be "reasonably probable that a result more favorable to the appellant would have been reached if the error had not been committed." Damico v. Lundberg, 379 So.2d 964, 965 (Fla. 2d DCA 1979).  It is up to the appellant to establish that the error is harmful. To determine whether an error is harmful, the appellate court must examine the entire record; the central issue is whether the error had an adverse effect upon the jury's verdict. Special v. Baux, 79 So.3d 755, 764 (Fla. 4th DCA 2011)(examines history of harmless error rule).  In Special v. West Boca Medical Center, 2014 WL 5856384 (Fla. Nov. 13, 2014)(specifying correct test for harmless error in civil appeals; the beneficiary of the error has the burden to prove that the error complained of did not contribute to the verdict)[1], the Florida Supreme Court confirms that the appellate court's analysis of harmless error necessarily includes consideration of the process of arriving at the result in the case, as well as the result itself.

Pursuant to Sec. 90.104, Florida Statutes, a court may predicate error, set aside or reverse a judgment, or grant a new trial on the basis of admitted or excluded evidence when a substantial right of the party is adversely affected.  Appellate courts review a trial court's decision to deny a motion for a new trial on damages or remittitur for an abuse of discretion. R.J. Reynolds Tobacco Co. v. Townsend, 90 So.3d 307, 310 (Fla. 1st DCA 2012)(citing Engle v. Liggett Grp., Inc., 945 So.2d 1246, 1263 (Fla. 2006)).  The Florida Supreme Court has explained the abuse of discretion standard:

---

[1] At this time, a motion for rehearing is pending before the Florida Supreme Court.

12

Case No. 8:13-CV-365-T-17AEP

> "In reviewing a true discretionary act, the appellate court must fully
> recognize the superior vantage point of the trial judge and should apply
> the 'reasonableness' test to determine whether the trial judge abused his
> discretion. If reasonable men could differ as to the propriety of the action
> taken by the trial court, then the action is not unreasonable and there can
> be no finding of an abuse of discretion. The discretionary ruling of the trial
> judge should be disturbed only when his decision fails to satisfy this test of
> reasonableness."

Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980).

"A court cannot allow a jury to award a greater amount of damages than what is
reasonably supported by the evidence at trial." Truelove v. Blount, 954 So.2d 1284,
1287 (Fla. 2d DCA 2007)(quoting McCarthy Bros. Co. v. Tilbury Constr., Inc., 849 So.2d
7, 9 (Fla. 1st DCA 2003). Festival Fun Parks, LLC v. Bellamy, 123 So.3d 684 (Fla. 4th
DCA 2013)(affirmed in part, reversed in part, remanded with instructions; finding that
jury ignored evidence presented at trial when reaching its verdict and relied on
inaccurate modifications to economist's summary). As the First District Court of Appeal
explains:

> "The fact that a damage award is large does not in itself render it
> excessive nor does it indicate that the jury was motivated by improper
> consideration in arriving at the award." And "not every verdict which
> raises a judicial eyebrow should shock the judicial conscience."...A verdict
> should not be declared excessive "merely because it is above the amount
> which the court itself considers the jury should have allowed"....The verdict
> should be disturbed only when "it is so inordinately large as obviously to
> exceed the maximum limit of a reasonable range within which the jury
> may properly operate."...(citations omitted).

R.J. Reynolds Tobacco Company v. Lyantie Townsend, as Personal Representative of
the Estate of Frank Townsend, 90 So.3d 307 (Fla. 1st DCA 2012)(finding that $10.8
million compensatory damage award did not exceed reasonable range within which jury
could properly operate, and punitive damages award was constitutionally excessive).

Case No. 8:13-CV-365-T-17AEP

The First District Court of Appeal further notes that the above principles are consistent with the legislative policy expressed in section 768.74, F.S. (2009), which recognizes that "the reasonable actions of a jury are a fundamental precept of American jurisprudence and that such actions should be disturbed or modified with caution and discretion." The statute also requires courts to give "close scrutiny" to damage awards, and lists criteria to consider in determining whether an award "exceeds a reasonable range of damages." These criteria include "whether the award is supported by the evidence", "whether the award bears reasonable relation to amount of damages proved and injury suffered," and "whether the amount of the award is indicative of prejudice, passion or corruption" on part of the jury. Townsend, 90 So.3d at 311. To warrant appellate interference, it must clearly appear that the jury ignored evidence or misperceived the merits relating to amounts recoverable. Department of Transp. v. Hawkins Bridge Co., 457 So.2d 525, 527 (Fla. 1st DCA 1984).

In asserting a violation of procedural due process as to the verdict in the Underlying Action, Defendant Geico argues that Florida's appellate procedures are inadequate to prevent the risk of erroneous deprivation of Defendant's property. Defendant Geico has sought a determination that, because Defendant Geico was prejudiced by inadequate appellate procedures, the Court should require the jury in this case to redetermine the amount of compensatory damages to be awarded to Plaintiff, and should ignore the amount of compensatory damages determined by the jury verdict in the Underlying Action. The State of Florida has an interest in the welfare of its citizens, corporate or otherwise, and in the legal process of adjudicating disputed claims. The Court notes that the application of Florida Statutes, Florida Rules of Civil Procedure and Florida Rules of Evidence protect Defendant from the risk of erroneous deprivation of its property.

Defendant Geico was afforded numerous  opportunities to show how trial error harmed Defendant. Defendant Geico asked the Second District Court of Appeal to

14

Case No. 8:13-CV-365-T-17AEP

determine that Defendant Geico's right to a fair trial was violated.  Notwithstanding the
amount of the final judgment entered in the trial court, the Second District Court of
Appeal had the authority and the opportunity to determine whether the  preserved
errors or fundamental error deprived Defendant Geico of a fair trial.   The trial court and
appellate court disagreed with Defendant Geico that trial error harmed Defendant such
that Defendant was denied a fair trial.   The ruling of the Second District Court of
Appeals states that none of the five issues raised on appeal warrants reversal, and the
reference to the "evidence presented" and "the context of the case" signals to this court
that the Second District Court of Appeal reviewed the process by which the jury verdict
was reached, and **not only the result**, the final judgment in the amount of the policy
limits.  The Court further notes that, although it is beside the point whether Defendant
actually availed itself of further review, additional review of adverse decisions of Florida
appellate courts is available, but Defendant Geico did not pursue further review.

Given the established procedures for maintaining the jury's impartiality during
trial, and the multiple opportunities afforded for review of the jury's verdict by the trial
court and on appeal, the Court finds that the available State procedures are
constitutionally adequate.    Defendant's claims of trial error were considered and
determined on appeal.  Defendant was not denied Defendant's right to procedural due
process.  The Court previously determined that collateral estoppel permits the Court to
accord binding effect to  factual finding of the jury as to the amount of compensatory
damages.

2.  GEICO General Insurance Co. v. Paton, 2014 WL 4626860 (Fla. 4th DCA Sept. 17,
2014)

In Paton, the Fourth District Court of Appeal held that the  jury's determination of
damages in trial to recover UIM benefits was binding on the insurance company in the
bad faith trial.

15

Case No. 8:13-CV-365-T-17AEP

Before the bad faith jury trial, Defendant Kelly Paton moved in limine to exclude evidence of damages, arguing that the excess verdict in the UM trial established the damages she could recover under her bad faith claim. Geico moved in limine to exclude from evidence in the bad faith trial the verdict returned in the UM trial, and to require Paton to prove her damages anew in the bad faith trial. The trial court granted Paton's motion and denied Geico's motion. The jury found for Paton, and the trial court entered a a final judgment in the amount of the excess verdict from the UM trial, plus prejudgment interest. Geico appealed to the Fourth District Court of Appeal.

On appeal, Geico argued that the trial court erred by treating the excess verdict from the UM trial as conclusive evidence of Paton's damages in the bad faith trial, "thereby denying the company procedural due process and violating its right to appeal and access to the courts." Id. The Fourth DCA found that Geico's assertion of the denial of procedural due process, the violation of Geico's right to appeal and access to the courts was not well-taken, based on: 1) the wording of the statute creating the bad faith cause of action; 2) the Supreme Court's jurisprudence in first party bad faith actions; and 3) Geico's failure to challenge the damage award after the first trial or in this appeal. Paton at *2.

In Paton, Geico did not move for a new trial after the UIM jury trial. The Fourth District Court of Appeal states:

> Because Geico never filed a rule 1.530(a) motion, we are left to guess at what errors might have infected the first trial. However, we note that the extent of damages awarded—$469,247—and the amount of the final judgment—$100,000—are in the same ballpark for damages arising from the type of injury of which plaintiff complained......**Many types of legal errors might have applied equally to damages above and below the $100,000 policy limit, such that the entire amount of damages was interrelated for the purpose of being appealable.** Because the

Case No. 8:13-CV-365-T-17AEP

> damages in the first trial fixed the amount of bad faith damages and an
> order denying a motion for new trial could have addressed damages in
> excess of $100,000, an appeal after the final judgment in the first trial
> directed at the total amount of damages thus would have fallen within the
> constitutional parameters of the jurisdiction of this Court as an appeal
> from a "final judgment[ ] or order[ ]" of the trial court...This approach
> conserves judicial resources and best serves the procedure contemplated
> by *Blanchard.* By failing to file a Rule 1.530(a) motion or take an appeal
> in the first trial, Geico did not preserve its right to challenge the total
> amount of the jury's damage award from the first trial.

Paton at *4 (Emphasis added)(citations omitted).

The Fourth District Court of Appeal also considered how the harmless error

approach taken in Geico General Ins. Co. v. Bottini, 93 So.3d 476 (Fla. 2d DCA 2012)

would affect a challenge to damages in a subsequent bad faith case before the same

trial judge:

> The harmless error approach of the *Bottini* majority would also appear to
> allow for a challenge to damages in the bad faith case; the harmless error
> finding would not preclude later consideration of the propriety of damages
> in excess of $50,000. *Bottini* would allow for this practical option where
> the trial judge defers ruling on the propriety of any amount of damages in
> excess of the final judgment until after a finding of bad faith in the second
> trial; in this instance an appellate challenge to the amount of damages
> would occur after the entry of a final judgment in the bad faith case.[FN2]
> Whether the bad faith cause of action has been abated or added by
> amendment, the record and damage issue are all part of the same case.
> If there is a jurisdictional bar to reviewing damages in the appeal of that
> lawsuit, the practical advantage of this option is its compliance with the
> First Rule of Judicial Economy by postponing a ruling on the legal
> propriety of a damage award until those damages are triggered by a bad
> faith determination.

Paton at *5.

Because this case is in a different posture than Paton, Paton provides limited

support for the binding effect of the jury verdict in this case. Paton relies in part on the

fact that Geico did not file a motion for new trial after the UIM trial, and did not appeal

17

Case No. 8:13-CV-365-T-17AEP

after the UIM trial.  Paton does explain that in a case such as Bottini, where the jury's damage award far exceeds the amount of the final judgment, the "final judgment or order" language of Article V, section 4(b)(1), [Florida Constitution] should be expansively read to include an appeal from an order denying a new trial in a first party suit for uninsured motorist benefits.  "The final judgment subsumes the earlier order's resolution of the jury's damage determination so that the total amount is an immediately appealable issue.  Such a reading is consistent with the Supreme Court's view in Blanchard that a first-party bad faith cause of action cannot accrue until after a factfinder's determination of the uninsured tortfeasor's liability and the extent of the plaintiff's damages." Paton at *5.  In Bottini, Defendant Geico **did** move for a new trial, and **did** appeal, asserting issues that applied to damages above and below the policy limit.  The trial judge in the Underlying Action did **not** defer ruling on the propriety of the amount of damages in excess of the final judgment in the UM trial, and Geico did not defer review of the alleged excessive damages until after the bad faith trial.  A separate bad faith case was filed after the appeal.


3.  Rooker-Feldman Doctrine


In Nicholas v. Shafe, 558 F.3d 1266, 1274 (11th Cir. 2009)(quoting Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005)), the Eleventh Circuit Court of Appeals "delineat[ed] the boundaries of the Rooker-Feldman doctrine: 'cases brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'"

In Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005), the United States Supreme Court held that:

Case No. 8:13-CV-365-T-17AEP

> the Rooker-Feldman doctrine "is confined to cases of the
> kind from which the doctrine acquired its name: cases
> brought by state-court losers complaining of injuries caused
> by state-court judgments rendered before the district court
> proceedings commenced and inviting district court review
> and rejection of those judgments. Rooker-Feldman does not
> otherwise override or supplant preclusion doctrine or
> augment the circumscribed doctrines that allow federal
> courts to stay or dismiss proceedings in deference to state
> court actions."

The Rooker-Feldman doctrine applies "both to federal claims raised in state court and to those 'inextricably intertwined ' with the state court's judgment. Casale v. Tillman, 558 F.3d 1258, 1260 (11th Cir. 2009). A claim is "inextricably intertwined" with a previously rendered state court judgment: "(1) where the success of the federal claim would 'effectively nullify' the state-court judgment; and (2) where the federal claim 'succeeds only to the extent that the state wrongly decided the issues.'" Figueroa v. Merscorp, Inc., 766 F.Supp.2d 1305, 1316 (S.D. Fla. 2011). A party's ability to raise a claim on appeal constitute[s] a reasonable opportunity to raise the claim. Rice v. Grubbs, 158 F. App'x 163, 165 (11th Cir. 2005). A federal claim will not be deemed "inextricably intertwined" with the state-court judgment to the extent that the party did not have a "reasonable opportunity to raise his federal claim in state proceedings." Casale, 558 F.3d 1260.

This case is not within the narrow boundaries of cases to which the Rooker-Feldman doctrine applies. The Court's subject matter jurisdiction is not in dispute. When a case is determined to be subject to the Rooker-Feldman doctrine, the remedy is to dismiss the case without prejudice for lack of subject matter jurisdiction. This case was not brought by a "state-court loser" complaining of injuries caused by a state-court judgment, but by a plaintiff who seeks to have this Court determine damages, according binding effect to the jury's determination of damages in the Underlying Action, in the event that a jury determines that the defendant proceeded in bad faith. In a very general sense, the conceptual framework of the Rooker Feldman doctrine supports the

Case No. 8:13-CV-365-T-17AEP

Court's determination to accord binding effect to the jury verdict setting compensatory damages in the Underlying Action.  Federal courts are courts of limited jurisdiction.  This court is not an appeal court for an adverse determination in the Circuit Court or in the Second District Court of Appeal.  To the extent that a party challenges a ruling of the Circuit Court of Second District Court of Appeal, the party must pursue review by the Florida Supreme Court or the United States Supreme Court.

In summary, the Court again finds that there was no violation of Defendant's right to procedural due process, the Court notes that Paton provides some support for the Court's determination, and the Rooker Feldman doctrine does not apply to the factual scenario before the Court.  After consideration, the Court **denies** Defendant's Motion for Reconsideration.

4.  Certification for Interlocutory Review

Defendant Geico requests certification for interlocutory review pursuant to 28 U.S.C. Sec. 1292 and Fed. R. Civ. P. 54.  Plaintiff opposes the request.

28 U.S.C. Sec. 1292(b) provides:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate determination of the litigation, he shall so state in writing in such order.

The Court does not think that the Court misinterpreted the ruling of the Second District Court of Appeal, to the prejudice of Defendant Geico.  However, the Court notes that there are cases which hold that damages must be litigated in a first party bad faith action, the opposite of the Court's conclusion in this case, e.g. King v. Geico General

20

Case No. 8:13-CV-365-T-17AEP

Insurance Company, 2012 WL 4052271 (M.D. Fla. 2012); Harris v. Geico General Ins. Co., 961 F.Supp.2d 1223 (S.D. Fla. 2013); Cagle v. Geico General Ins. Co., Case No. 6:13-CV-1591-ORL-31GJK.

In light of the amount of trial time reserved for this case, the Court certifies the Court's prior Order (Dkt. 99) and this Order for interlocutory review, on the issue of the binding effect of the jury's determination of damages in the UM trial; the Orders involve a controlling question of law as to which there is a substantial ground for difference of opinion, and an immediate appeal may materially advance the ultimate determination of the litigation. Accordingly, it is

ORDERED Defendant's Motion for Reconsideration (Dkt. 100) is **denied**. The Court certifies the Court's Order (Dkt. 99) and this Order for interlocutory review; the Orders involve a controlling question of law as to which there is a substantial ground for difference of opinion and an immediate appeal may materially advance the ultimate determination of the litigation.

DONE and ORDERED in Chambers, in Tampa, Florida on this
19th day of December , 2014.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record

21

Case 8:13-cv-00365-EAK-AEP Document 107-1 Filed 12/19/14 Page 1 of 6 PageID 2966
Mar.09 2011 6:23PM HP Fax     USCA11 Case: 15-12266     Document: 10     Date Filed: 06/09/2015     Page: 46 of 60
Case 8:13-cv-00365-EAK-AEP Document 28-14  Filed 11/06/13  Page 1 of 7 PageID 351

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL ACTION

MARY BOTTINI, as Personal
Representative of the Estate of
GERARD BOTTINI,

           Plaintiff,                         CASE NO. 08–08851

v.                                          DIVISION "I"

GEICO GENERAL INSURANCE
COMPANY, a foreign corporation
and MARISSA D. PENSA,

           Defendants.
_____/

## AMENDED MOTION FOR NEW TRIAL

      Comes now the Defendant, GEICO, by and through undersigned counsel and pursuant to Rule

1.530(b) of the Florida Rules of Civil Procedure, and hereby files this its Motion for New Trial.

1.      This case involves a claim for damages due to a wrongful death claim presented under the

          Plaintiff's Uninsured Motorist Insurance policy with the Defendant.

2.      A jury trial in the above-styled case commenced on January 24, 2010, and a verdict was returned

          on February 3, 2011.

3.      The jury returned the following verdict as it related to damages:

     - Damages of the Estate: $103,552
     - Economic Damages of Mary Bottini: $522,478
     - Non-economic Damages of Mary Bottini: $14,000,000
     - Economic Damages of D███ B███: $363,070
     - Non-economic Damages of D███ B███: $5,000,000
     - Economic Damages of G███ B███: $423,256
     - Non-economic Damages of G███ B███: $5,000,000
     - Economic Damages of K███ B███: $459,910
     - Non-economic Damages of K███ B███: $5,000,000

ILE COPY                EXHIBIT N

4.    Based upon multiple errors throughout the course of the trial inclusive of pretrial motions, a new trial is appropriate.

5.    According to *Brown v. Estate of A. P. Stuckey*, 749 So. 2d 490 (Fla. 1999), there are three grounds on which a new trial may be granted: (1) the verdict shocks the judicial conscious; (2) the jury has been unduly influenced by passion or prejudice; (3) the verdict is contrary to the manifest weight of the evidence.

6.    The grounds for the motion for new trial are as follows:

    a.    The court improperly limited the testimony of witness Garrick Lampkin, pursuant to Plaintiff's Motion in Limine. Mr. Lampkin had testified in discovery that he believed Mr. Bottini "overcompensated" while swerving to avoid an impact and that this lead to his loss of control of the vehicle. This subject was proper testimony from a lay witness who had been driving for many years. Mr. Lampkin was a professional truck driver who had witnessed many, many drivers on the road and who was trained as a driver in accident avoidance and safe driving methods. His opinion, derived from his unique experience and qualifications, as well as simple observation of Mr. Bottini's driving was entirely appropriate and should not have been excluded. The exclusion of this testimony, was prejudicial to the Defendant, as he was one of the few persons who had actually witnessed Mr. Bottini's driving immediately prior to the accident. Moreover, while the Court excluded this testimony, it still allowed Mr. Lampkin to testify regarding his observations that directly inferred that Ms. Geisbert and Ms. Pensa appeared impaired was doubly prejudicial to defendant. Certainly Mr. Lampkin was in not qualified to ascertain whether these persons were impaired, yet the court allowed him to present such testimony to the jury. The exclusion of testimony that was directly within the scope of his knowledge while allowing highly prejudicial testimony regarding matters that are fare outside the scope of his knowledge was extremely prejudicial to Defendant.

        In a case like this in which liability for the accident was so highly contested and the questions of fault and sympathy so tightly drawn, the exclusion of any evidence relevant to those issues was error. The fact that the jury assigned 100% of the fault to Ms. Geisbert, despite evidence of Mr. Bottini's careless operation of his vehicle is clear indication of prejudice to the Defendant.

    b.    The court improperly permitted graphic and highly inflammatory photos of the autopsy to be admitted into evidence. This was highly prejudicial as no one was disputing his death or that his death resulted from the accident. There was no right to recover for pain and suffering between time of injury and time of death and the autopsy photos established nothing of relevance to this lawsuit. They did nothing but inflame the

Case 8:13-cv-00365-EAK-AEP   Document 107-1   Filed 12/19/14   Page 3 of 6 PageID 2968
USCA11 Case: 15-12266     Document: 10     Date Filed: 06/09/2015     Page: 48 of 60
Mar. 09  2011  6:23PM  HP Fax
Case 8:13-cv-00365-EAK-AEP   Document 28-14   Filed 11/06/13   Page 3 of 7 PageID 353

sympathy of the jury. Defendant was grossly prejudiced by the admission of these photos and the amount of the verdict clearly shows such inflammatory prejudice was present.

c.     The Court improperly permitted Plaintiff to play a statement from Katie Geisbert that was taken prior to trial. While portions of the statement may have contradicted her in - court testimony as to who was driving the vehicle, the remaining portions of the statement served no purpose, but to inflame the jury against her. They did not impeach any statements that she made in court or deposition and did not relate to any issue in the case. Indeed, had Defendant sought to use testimony of her opinion regarding Plaintiff's poor driving ability, this would have been excluded as an improper opinion from a lay witness, much like the court did with Mr. Lampkin's testimony regarding Mr. Bottini's overcompensation. The clear reason Plaintiff sought to play Ms. Geisbert's statement was to portray her in a negative light through her cursing and other slurs. In addition, the statement played to the jury included comments regarding Ms. Geisbert's prior accidents, without any opportunity to establish whether she was at-fault for the accidents. This was clearly improper impeachment and such evidence would never have been admissible during cross examination on the stand. To allow such evidence in "through the back door" of an investigator's "statement" is highly improper, directly in violation of the rules of evidence and, in this case, has severely prejudiced the defendant. Ms. Geisbert's credibility was a key issue in the defense and to the extent that improperly admitted evidence has reduced her credibility, Defendant has been prejudiced.

The court's conclusion that Katie Geisbert could be treated like a party is legally incorrect. Ms. Geisbert was not a party to this action. There is no provision in the rules of evidence for "*de facto* parties" or "functional equivalent parties". Accordingly, relying on rules applicable to parties for evidentiary issues related to non-parties is improper. As stated above, the error was prejudicial to Defendant.

d.     The Court improperly admitted videotape evidence of the vehicles showing alcohol within Katie Geisbert's vehicle, as well as a cigarette roller. Such portions of the video could have been easily redacted and served no purpose other than to inflame the jury against Katie Geisbert and to portray her in a negative light. The presence of alcoholic beverages in a vehicle is so highly prejudicial that, unless there is independent evidence that the driver is impaired, should never be shown to the jury. In this case, there is no such independent evidence of impairment and no evidence that the beer bottle shown in the photo had been consumed on the day of the incident. This could have been edited out of the video and the failure to do so was highly prejudicial. Moreover, since Geisbert was not a party and there was no evidence that she was impaired, it was entirely irrelevant. Plaintiff could not establish that they played any part in causing this accident and to show them to the jury served no relevant purpose at all.

Case 8:13-cv-00365-EAK-AEP   Document 107-1   Filed 12/19/14   Page 4 of 6 PageID 2969

Mar. 09  USCA11 Case: 15-12266    Document: 10    Date Filed: 06/09/2015    Page: 49 of 60
2011 6:24PM HP Fax                                          Page 5
Case 8:13-cv-00365-EAK-AEP   Document 28-14   Filed 11/06/13   Page 4 of 7 PageID 354

e.    Shortly after showing the jury the improper and prejudicial video discussed above, the court then permitted Mr. Yerrid to show Ms. Geisbert a photo that showed medication bottles that had also been in the car. The photo had not been admitted because it was too highly prejudicial. Thus, jury would never have known about the medications. However, when counsel published the photo to the witness, she defensively blurted out that they were "her medications." This thus enabled Plaintiff to put before the jury evidence which this court had concluded was too highly prejudicial to be admissible. The manipulation of the witness in such a manner should not be permitted. This incident, following so closely on the heels of the improper video tape showing beer and a cigarette roller was cumulatively so prejudicial and Defendant immediately sought a mistrial, which was denied. Again, such evidence was not relevant, since there was no issue to the jury as to whether Ms. Geisbert was impaired. The sole purpose of the evidence was to paint a negative picture of Ms. Geisbert and to prejudice the jury against her and thereby against Defendant who is vicariously liable for her conduct. However, the prejudice does not arise from her being negligent or not negligent, but rather from the jury thinking she is a bad person. That is clearly improper and, again, since she was a critical witness for the Defense, such "bad person" evidence was extremely prejudicial.

f.    The Court improperly permitted Kerry Brown to testify at length regarding the survivors' need for future medical treatment. Even though counsel stated that these were not damages they "were seeking" this did not cure the prejudice. Such damages are not recoverable for survivors under the wrongful death Act and evidence of such damages should never have been permitted. The entire purpose of such evidence was to improperly give the jury the impression that they needed to compensate the survivors for such treatment. This can only be done by exaggerating and increasing the other awards in the case. Given the shocking verdict in this case, it is clear that this worked quite successfully and the jury did, indeed, factor in such improper items as the survivors' need for counseling and other future medical treatment.

g.    The court improperly precluded relevant and critical evidence that related to the true economic value of the decedent's business which was directly related to the loss of net accumulations and lost support. The jury awarded $1,768,714 in lost support and services to the various survivors. This number was clearly based on distorted and inaccurate figures because the court prevented Defendant's economic expert from explaining the full financial impact of payroll tax liability on plaintiff's business. This liability was clearly owed by the decedent's business and obviously impacted the profitability of the business. Accordingly, the financial figures upon which the jury based their lost support and services award were in error and the end result is an improper and reversibly tainted verdict.

h.    The Court improperly limited Defendant's engine expert from examining the engine prior to trial, improperly restricted his ability to testify at trial regarding his viewing of the engine and by not compelling Plaintiff to produce the engine for his use during trial testimony. The engine had been marked for identification, and should never have been

-4-

permitted out of the courthouse. Plaintiff sought to admit the engine into evidence, and Defendant agreed that such admission was proper. The engine had been timely disclosed and listed as an exhibit for trial. The court's reason for excluding it from evidence was improper and without support in Florida law. The consequence of all these rulings was that Defendant's expert was improperly prevented from demonstrating to the jury why the Geisbert engine failed and why it was not the result of her negligence. This was a highly contested issue at trial and the restrictions on Defendant's ability to fully explore this issue with the jury was fatally prejudicial to Defendant.

The error in failing to admit the engine or to compel its return to the courthouse was further compounded when counsel for Plaintiffs actually testified to the jury regarding the reasons why the engine was not present. There was no evidence in the proceedings on that issue and such testimony from counsel is highly improper and prejudicial.

i.   The court improperly instructed the jury on a legal issue that had never been pleaded and on which no evidence had ever been admitted and which was legally incorrect. At the charge conference, Plaintiff moved to include an instruction that Tim Lloyd was an agent of Katie Geisbert and Anita Lloyd. The sole basis for such purported agency relationship was because he was Anita's husband and because they trusted him to do repairs on the vehicle. In so doing, the court directly imputed any of Lloyd's negligence to Geisbert and thereby to GEICO. However, there is absolutely no factual support to find that an agency relationship existed between Geisbert and Lloyd and this instruction was error as a matter of law. It was prejudicial because the jury was thereby prevented from possibly assigning a portion of fault for the accident to Lloyd. Since any negligence attributed to Lloyd would have reduced the negligence attributed to Geisbert and thereby reduced GEICO's responsibility for the damages, such instruction was patently error and highly prejudicial to Defendant.

j.   The Court improperly refused to give a curative instruction or grant a mistrial when counsel for the Plaintiff, an experienced trial lawyer, attempted to equate the damages in this case to some type of priceless painting or other work of art. Counsel knew full well that such argument was improper, having already represented to the court that he would not make such argument in response to Defendant's motion *in limine* on that very topic. The argument is clearly and unequivocally improper. *Chin v. Caiaffa*, 42 So.3d 300 (Fla. 3rd DCA 2010)(finding that closing argument where counsel compared plaintiff's life to a Picasso painting was reversible error). In this case, there was a timely objection and motion for mistrial, thus, Defendant does not have to establish that this was fundamental error. *cf. Carnival Crop. v. Pajares*, 972 So. 2d 973, 979 (Fla. 3rd DCA 2007)(finding a Van Gogh comparison to be "highly improper" but not fundamental error); *Fasani v. Kowalski*, 43 So.3d 805 (Fla. 3rd DCA 2010).

k.   Even if any of the above errors was not, in and of itself, sufficiently prejudicial to warrant a new trial, the cumulative effect of the errors clearly supports a new trial. As stated by the Third DCA in *Fasani*,

Case 8:13-cv-00365-EAK-AEP   Document 107-1   Filed 12/19/14   Page 6 of 6 PageID 2971
USCA11 Case: 15-12266   Document: 10   Date Filed: 06/09/2015   Page: 51 of 60
Mar 09  2011  8:25PM  HP Fax
Case 8:13-cv-00365-EAK-AEP   Document 28-14   Filed 11/06/13   Page 6 of 7 PageID 356

> Although "a single improper remark or argument might not be so prejudicial as to require reversal," *Pajares*, 972 So. 2d at 979,... the cumulative effect of ... counsel's numerous improper comments and arguments operated to deprive the appellants of a fair trial. *See Muhammad v. Toys "R" Us, Inc.*, 668 So. 2d 254, 259 (Fla. 1st DCA 1996) ("[T]he collective import of counsel's personal injections, and irrelevant and inflammatory remarks, was so extensive as to have prejudicially pervaded the entire trial, precluding the jury's rational consideration of the evidence and resulting in an unfair trial."). Accordingly, a new trial is warranted."

*Fasani*, 43 So.3d at 811-12.

7.    Due to the above, the verdict was as a result of the jury being unduly influenced by passion or prejudice and was against the manifest weight of the evidence.

8.    In addition to the grounds stated above, undersigned counsel moved for mistrial during the Plaintiff's rebuttal closing argument and this court reserved ruling.

9.    Based upon the above stated grounds, a motion for new trial is appropriate and should be granted.

WHEREFORE, Defendant respectfully requests this court enter an order granting its motion for new trial and/or granting its motion for mistrial.

Case 8:13-cv-00365-EAK-AEP   Document 107-2   Filed 12/19/14   Page 1 of 7 PageID 2972
USCA11 Case: 15-12066   Document: 18-15   Date Filed: 06/09/2015   Page: 52 of 60
Case 8:13-cv-00365-EAK-AEP   Document 28-15   Filed 11/06/13   Page 1 of 7 PageID 344

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL ACTION

MARY BOTTINI, as Personal
Representative of the Estate of
GERARD BOTTINI,

        Plaintiff,                          CASE NO.  08–08851

v.                                          DIVISION "I"

GEICO GENERAL INSURANCE
COMPANY, a foreign corporation
and MARISSA D. PENSA,

        Defendants.
_____/

### MOTION FOR REMITTITUR

      COMES NOW the Defendant, by and through undersigned counsel, and pursuant to Florida

Statutes 768.74, and hereby requests this court grant its Motion for Remittitur.  As good grounds

therefore would state the following:

1.      This case involves a claim for damages due to a wrongful death claim presented under the

        Plaintiff's Uninsured Motorist Insurance policy with the Defendant.

2.      A jury trial in the above-styled case commenced on January 24, 2010, and a verdict was returned

        on February 3, 2011.

3.      The jury returned the following verdict as it related to damages:

      - Damages of the Estate: $103,552
      - Economic Damages of Mary Bottini: $522,478
      - Non-economic Damages of Mary Bottini: $14,000,000
      - Economic Damages of D█████ B███: $363,070
      - Non-economic Damages of D█████ B███: $5,000,000
      - Economic Damages of G████ B███: $423,256
      - Non-economic Damages of G████ B███: $5,000,000
      - Economic Damages of K████ B███: $459,910

EXHIBIT M

- Non-economic Damages of K███ B███: $5,000,000

4.  Florida Statutes 768.74(1) states as follows:

> In any action to which this part applies wherein the trier of fact determines that liability exists on the part of the defendant and a verdict is rendered which awards money damages to the plaintiff, it shall be the responsibility of the court, upon proper motion, to review the amount of such award to determine if such amount is excessive or inadequate in light of the facts and circumstances which were presented to the trier of fact.

5.  Based upon the testimony and evidence presented to the jury, the amount awarded by the jury is excessive.

6.  Florida Statute 768.74(5) provides the necessary criteria for remittitur. Specifically, the statute identifies the following criteria in assessing a motion for remittitur:

    (a)  whether the amount awarded is indicative of prejudice, passion, or coercion on the part of the trier of fact;

    (b)  whether it appears that the trier of fact ignored the evidence in reaching a verdict or misconceived the merits of the case relating to the amounts of damages recoverable;

    (c)  whether the trier of fact took improper elements of damages into account or arrived at the amount of damages by speculation and conjecture;

    (d)  whether the amount awarded bears a reasonable relation to the amount of damages proved and the injuries suffered; and

    (e)  whether the amount awarded is supported by the evidence and in as such that it could be adduced in a logical manner by reasonable persons.

7.  The amount awarded as it related to non-economic damages is certainly indicative of prejudice and passion on the part of the trier of fact. Furthermore, the finding of no comparative fault on the part of the driver-decedent suggests that the trier of fact ignored undisputed evidence in the case. In addition, the size of the economic and non-economic damages suggest that the trier of fact took improper elements of damage into account to arrive at the verdict. Finally, the amount

-2-

Case 8:13-cv-00365-EAK-AEP Document 107-2 Filed 12/19/14 Page 3 of 7 PageID 2974
USCA11 Case: 15-12266 Document 19-1 Date Filed: 06/09/2015 Page: 54 of 60
Case 8:13-cv-00365-EAK-AEP Document 28-15 Filed 11/06/13 Page 3 of 7 PageID 346

of the damages bears no reasonable relation to the damages proven, nor is it supported by the evidence such that it could be adduced in a logical manner by reasonable persons.

8.   More specifically, the following elements of the trial led to this excessive verdict and supports the conclusions reached in the paragraph above:

a.   The court improperly limited the testimony of witness Garrick Lampkin, pursuant to Plaintiff's Motion in Limine. Mr. Lampkin had testified in discovery that he believed Mr. Bottini "overcompensated" while swerving to avoid an impact and that this lead to his loss of control of the vehicle. This subject was proper testimony from a lay witness who had been driving for many years. Mr. Lampkin was a professional truck driver who had witnessed many, many drivers on the road and who was trained as a driver in accident avoidance and safe driving methods. His opinion, derived from his unique experience and qualifications, as well as simple observation of Mr. Bottini's driving was entirely appropriate and should not have been excluded. The exclusion of this testimony, was prejudicial to the Defendant, as he was one of the few persons who had actually witnessed Mr. Bottini's driving immediately prior to the accident. Moreover, while the Court excluded this testimony, it still allowed Mr. Lampkin to testify regarding his observations that directly inferred that Ms. Geisbert and Ms. Pensa appeared impaired was doubly prejudicial to defendant. Certainly Mr. Lampkin was in not qualified to ascertain whether these persons were impaired, yet the court allowed him to present such testimony to the jury. The exclusion of testimony that was directly within the scope of his knowledge while allowing highly prejudicial testimony regarding matters that are fare outside the scope of his knowledge was extremely prejudicial to Defendant.

In a case like this in which liability for the accident was so highly contested and the questions of fault and sympathy so tightly drawn, the exclusion of any evidence relevant to those issues was error. The fact that the jury assigned 100% of the fault to Ms. Geisbert, despite evidence of Mr. Bottini's careless operation of his vehicle is clear indication of prejudice to the Defendant.

b.   The court improperly permitted graphic and highly inflammatory photos of the autopsy to be admitted into evidence. This was highly prejudicial as no one was disputing his death or that his death resulted from the accident. There was no right to recover for pain and suffering between time of injury and time of death and the autopsy photos established nothing of relevance to this lawsuit. They did nothing but inflame the sympathy of the jury. Defendant was grossly prejudiced by the admission of these photos and the amount of the verdict clearly shows such inflammatory prejudice was present.

c.   The Court improperly permitted Plaintiff to play a statement from Katie Geisbert that was taken prior to trial. While portions of the statement may have contradicted her in - court testimony as to who was driving the vehicle, the remaining portions of the

-3-

statement served no purpose, but to inflame the jury against her. They did not impeach any statements that she made in court or deposition and did not relate to any issue in the case. Indeed, had Defendant sought to use testimony of her opinion regarding Plaintiff's poor driving ability, this would have been excluded as an improper opinion from a lay witness, much like the court did with Mr. Lampkin's testimony regarding Mr. Bottini's overcompensation. The clear reason Plaintiff sought to play Ms. Geisbert's statement was to portray her in a negative light through her cursing and other slurs. In addition, the statement played to the jury included comments regarding Ms. Geisbert's prior accidents, without any opportunity to establish whether she was at-fault for the accidents. This was clearly improper impeachment and such evidence would never have been admissible during cross examination on the stand. To allow such evidence in "through the back door" of an investigator's "statement" is highly improper, directly in violation of the rules of evidence and, in this case, has severely prejudiced the defendant. Ms. Geisbert's credibility was a key issue in the defense and to the extent that improperly admitted evidence has reduced her credibility, Defendant has been prejudiced.

The court's conclusion that Katie Geisbert could be treated like a party is legally incorrect. Ms. Geisbert was not a party to this action. There is no provision in the rules of evidence for "*de facto* parties" or "functional equivalent parties". Accordingly, relying on rules applicable to parties for evidentiary issues related to non-parties is improper. As stated above, the error was prejudicial to Defendant.

d.   The Court improperly admitted videotape evidence of the vehicles showing alcohol within Katie Geisbert's vehicle, as well as a cigarette roller. Such portions of the video could have been easily redacted and served no purpose other than to inflame the jury against Katie Geisbert and to portray her in a negative light. The presence of alcoholic beverages in a vehicle is so highly prejudicial that, unless there is independent evidence that the driver is impaired, should never be shown to the jury. In this case, there is no such independent evidence of impairment and no evidence that the beer bottle shown in the photo had been consumed on the day of the incident. This could have been edited out of the video and the failure to do so was highly prejudicial. Moreover, since Geisbert was not a party and there was no evidence that she was impaired, it was entirely irrelevant. Plaintiff could not establish that they played any part in causing this accident and to show them to the jury served no relevant purpose at all.

e.   Shortly after showing the jury the improper and prejudicial video discussed above, the court then permitted Mr. Yerrid to show Ms. Geisbert a photo that showed medication bottles that had also been in the car. The photo had not been admitted because it was too highly prejudicial. Thus, jury would never have known about the medications. However, when counsel published the photo to the witness, she defensively blurted out that they were "her medications." This thus enabled Plaintiff to put before the jury evidence which this court had concluded was too highly prejudicial to be admissible. The manipulation of the witness in such a manner should not be permitted. This incident, following so closely on the heels of the improper video tape showing beer and a cigarette

-4-

roller was cumulatively so prejudicial and Defendant immediately sought a mistrial, which was denied. Again, such evidence was not relevant, since there was no issue to the jury as to whether Ms. Geisbert was impaired. The sole purpose of the evidence was to paint a negative picture of Ms. Geisbert and to prejudice the jury against her and thereby against Defendant who is vicariously liable for her conduct. However, the prejudice does not arise from her being negligent or not negligent, but rather from the jury thinking she is a bad person. That is clearly improper and, again, since she was a critical witness for the Defense, such "bad person" evidence was extremely prejudicial.

f.     The Court improperly permitted Kerry Brown to testify at length regarding the survivors' need for future medical treatment. Even though counsel stated that these were not damages they "were seeking" this did not cure the prejudice. Such damages are not recoverable for survivors under the wrongful death Act and evidence of such damages should never have been permitted. The entire purpose of such evidence was to improperly give the jury the impression that they needed to compensate the survivors for such treatment. This can only be done by exaggerating and increasing the other awards in the case. Given the shocking verdict in this case, it is clear that this worked quite successfully and the jury did, indeed, factor in such improper items as the survivors' need for counseling and other future medical treatment.

g.     The court improperly precluded relevant and critical evidence that related to the true economic value of the decedent's business which was directly related to the loss of net accumulations and lost support. The jury awarded $1,768,714 in lost support and services to the various survivors. This number was clearly based on distorted and inaccurate figures because the court prevented Defendant's economic expert from explaining the full financial impact of payroll tax liability on plaintiff's business. This liability was clearly owed by the decedent's business and obviously impacted the profitability of the business. Accordingly, the financial figures upon which the jury based their lost support and services award were in error and the end result is an improper and reversibly tainted verdict.

h.     The Court improperly prevented Defendant's expert from using the engine which had been published to the jury and relied upon extensively by Plaintiff's expert. The engine that was in the vehicle on the date of the accident was brought into the courtroom by Plaintiff, who sought to have it admitted into evidence. It was thereafter used extensively by Plaintiff's expert to support and demonstrate his opinions regarding the engine problems.

The Court erred in refusing to admit the engine into evidence, as it was a critical piece of evidence in regard to how this accident. The causation of the accident was the key issue in this case and any evidence that would have been relevant to that issue should have been admitted. The court's reason for refusing to admit the engine is not legally viable, since large, bulky and logistically difficult evidence is frequently used in a variety of cases. The fact that the engine presented a difficult storage issue is not a valid basis

-5-

Case 8:13-cv-00365-EAK-AEP Document 107-2 Filed 12/19/14 Page 6 of 7 PageID 2977
USCA11 Case: 15-12266 Document: 19-1 Date Filed: 06/09/2015 Page: 57 of 60
Case 8:13-cv-00365-EAK-AEP Document 28-15 Filed 11/06/13 Page 6 of 7 PageID 349

to disallow it from being admitted into evidence.

Moreover, the Court expressly required that the engine be maintained in a locked area during the trial, but Plaintiff's counsel removed the engine from the courthouse and refused to bring it back and this court refused to compel such production. Defendant was thus effectively prohibited from using evidence in the case. This evidence was necessary for Defendant's own expert and the failure of the expert to have the engine present so that he could demonstrate the basis for his opinions was clearly prejudicial.

The error was further compounded when counsel for Plaintiffs actually testified to the jury regarding the reasons why the engine was not present. There was no evidence in the proceedings on that issue and such testimony from counsel is highly improper and prejudicial.

i.    The court improperly instructed the jury on a legal issue that had never been pleaded and on which no evidence had ever been admitted and which was legally incorrect. At the charge conference, Plaintiff moved to include an instruction that Tim Lloyd was an agent of Katie Geisbert and Anita Lloyd. The sole basis for such purported agency relationship was because he was Anita's husband and because they trusted him to do repairs on the vehicle. In so doing, the court directly imputed any of Lloyd's negligence to Geisbert and thereby to GEICO. However, there is absolutely no factual support to find that an agency relationship existed between Geisbert and Lloyd and this instruction was error as a matter of law. It was prejudicial because the jury was thereby prevented from possibly assigning a portion of fault for the accident to Lloyd. Since any negligence attributed to Lloyd would have reduced the negligence attributed to Geisbert and thereby reduced GEICO's responsibility for the damages, such instruction was patently error and highly prejudicial to Defendant.

j.    The Court improperly refused to give a curative instruction or grant a mistrial when counsel for the Plaintiff, an experienced trial lawyer, attempted to equate the damages in this case to some type of priceless painting or other work of art. Counsel knew full well that such argument was improper, having already represented to the court that he would not make such argument in response to Defendant's motion *in limine* on that very topic. The argument is clearly and unequivocally improper. *Chin v. Caiaffa*, 42 So.3d 300 (Fla. 3rd DCA 2010)(finding that closing argument where counsel compared plaintiff's life to a Picasso painting was reversible error). In this case, there was a timely objection and motion for mistrial, thus, Defendant does not have to establish that this was fundamental error. *cf. Carnival Crop. v. Pajares*, 972 So. 2d 973, 979 (Fla. 3rd DCA 2007)(finding a Van Gogh comparison to be "highly improper" but not fundamental error); *Fasani v. Kowalski*, 43 So.3d 805 (Fla. 3rd DCA 2010).

9.    For the foregoing reasons, Defendant respectfully requests this court grant its remittitur as it

Case 8:13-cv-00365-EAK-AEP   Document 107-2   Filed 12/19/14   Page 7 of 7 PageID 2978
USCA11 Case: 15-12366   Document: 18-15   Date Filed: 06/09/2015   Page: 58 of 60
Case 8:13-cv-00365-EAK-AEP   Document 28-15   Filed 11/06/13   Page 7 of 7 PageID 350

relates to past economic damages, future economic damages, past pain and suffering, and future

pain and suffering.

WHEREFORE, Defendant respectfully requests this court enter an order granting this motion,

allowing reductions of the verdict by the sums noted above, and granting any other relief deemed to be

necessary and appropriate.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S.

Mail to David D. Dickey, Esq., The Yerrid Law Firm, Bank of America Plaza, 101 E. Kennedy Blvd.,

Suite 3910, Tampa, FL 33602-5192, on February 11, 2011.

THOMPSON GOODIS THOMPSON
GROSECLOSE RICHARDSON MILLER, P.A.

_____
JAMES B. THOMPSON, JR., ESQUIRE
Florida Bar No. 0872938
Post Office Box 90
St. Petersburg, Florida 33731
Phone: (727) 823-0540
Fax: (727) 823-0230
Attorney for Defendant GEICO

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................................... iii

STATEMENT OF THE CASE ................................................................................. 1

STATEMENT OF THE FACTS .............................................................................. 2

    A.    The Accident, UM Coverage, and Settlements. .......................... 2

    B.    Theories of the Case. ................................................................... 4

    C.    Rulings Effecting GEICO's Liability Expert's
        Testimony. ................................................................................... 6

        1.    Pretrial ruling on inspection of the engine. ...................... 6

        2.    Rulings at trial concerning Swanger's testimony. ........... 8

    D.    Plaintiff's "Good v. Evil" Theme And Presentation Of
        "Bad Character" Evidence As To Geisbert. .............................. 13

    E.    Plaintiff's Value of Life Closing Argument............................. 15

    F.    Agency Instruction that Geisbert and Anita Lloyd Were
        Responsible for Any Negligence of Tim Lloyd. ...................... 16

    G.    The Verdict and Post-Trial Motions......................................... 17

SUMMARY OF THE ARGUMENT...................................................................... 18

STANDARDS OF REVIEW ................................................................................. 21

ARGUMENT ........................................................................................................ 22

I.    A NEW TRIAL IS REQUIRED BECAUSE THE TRIAL
    COURT'S ERRONEOUS RULINGS EFFECTING
    SWANGER'S TESTIMONY DENIED GEICO A FAIR
    TRIAL. .......................................................................................... 22

    A.    Improper Pretrial Restriction On Inspection. ........................... 22

i

## TABLE OF CONTENTS
### (Continued)

**Page**

| | | | |
|---|---|---|---|
| | B. | Improper Refusal To Compel The Return Of The Engine To The Courtroom And Exclusion Of The Engine From Evidence. | 23 |
| | C. | Improper Restriction Of Swanger's Trial Testimony. | 25 |
| | D. | Improper Presentation Of False Testimony To The Jury. | 28 |
| II. | | THE TRIAL COURT ERRED BY INSTRUCTING THE JURY THAT GEISBERT AND ANITA LLOYD WERE RESPONSIBLE FOR ANY NEGLIGENCE OF TIM LLOYD AND SENDING A VICARIOUS LIABILITY CLAIM TO THE JURY WHEN SUCH A CLAIM WAS NEVER PLED | 32 |
| III. | | THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO GRANT A NEW TRIAL BASED ON PLAINTIFF'S HIGHLY PREJUDICIAL AND INFLAMMATORY CLOSING ARGUMENT, INCLUDING AN IMPROPER VALUE OF LIFE ARGUMENT | 35 |
| IV. | | THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO GRANT A NEW TRIAL BASED ON PLAINTIFF'S CHARACTER ASSASSINATION OF GEISBERT AT TRIAL. | 39 |
| V. | | A NEW TRIAL IS REQUIRED BECAUSE THE UNPRECEDENTED $30 MILLION VERDICT IS EXCESSIVE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. | 46 |
| CONCLUSION | | | 49 |
| CERTIFICATE OF SERVICE | | | 50 |
| CERTIFICATE OF COMPLIANCE | | | 50 |

ii
